The STATE of Utah, Plaintiff and Respondent,

v.

David CALAMITY and Albert Whitehair, Defendants and Appellants.

No. 20497.

Supreme Court of Utah.

March 23, 1987.

Phil L. Hansen, Salt Lake City, for defendants and appellants.

David L. Wilkinson, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., for plaintiff and respondent.

HOWE, Justice:

Defendant Albert Whitehair appeals his jury convictions of two counts of rape. U.C.A., 1953, § 76–5–402. His co-defendant, David Calamity, was acquitted.

On October 27, 1984, the fourteen-year-old victim and her friend were walking home across the Richfield High School football field when a group of Indian boys came out of a dormitory and chased them. The girls were quickly caught and separated. The victim was dragged to the baseball diamond where the boys stripped her of some of her clothes. Some of the boys held her down while others engaged in sexual intercourse. As the victim attempted to put her pants back on and flee, a second group of boys attacked her. She resisted the boys and told them to stop but was overpowered. Meanwhile, her companion was released without having been raped. The victim identified defendant as one of the boys who held her to the ground.

On October 28, 1984, the police took several boys, including defendant, to the Richfield police station to discuss the incident. An officer read defendant his *Miranda* rights and asked if he understood. Although he did not respond verbally, he nodded his head affirmatively. The officer then asked him if he would write a voluntary statement, read the *Miranda* warning, and fill out a police form. Defendant made a written statement wherein he confessed to holding the victim down during the rapes.

At trial, the court heard and denied defendant's motion to suppress his written statement. The motion was made on the grounds that the corpus delicti had not been proved, *Miranda* standards were violated, and the statement was not voluntary. The State then called as a witness one of the boys to testify as to what he had observed on the night of the incident. The witness had made a prior written statement to the police. The prosecutor referred the witness to his written statement to refresh his memory when he could not remember certain details. When the witness persisted in his lack of recall, the State offered the written statement into evidence and the court received it over defendant's objections. Defendant was convicted of two counts of rape; his co-defendant was acquitted.

## I

Defendant contends that his written statement was obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He asserts that since he remained silent when the officer asked if he understood the *Miranda* warning, he did not voluntarily waive his rights. In *State v. Hegelman*, 717 P.2d 1348 (Utah 1986), this Court summarized the legal standards relating to voluntary waiver of *Miranda* rights as follows:

> A suspect must affirmatively invoke his right to silence, *United States v. Rice*, 652 F.2d 521 (5th Cir.1981); *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and a waiver of those rights may be inferred from his acknowledgement of his understanding of his rights and his subsequent course of conduct. *North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979). It is not required that the waiver be express. We look at the totality of the circumstances to determine if a suspect has made a valid waiver ... *Fare v. Michael C.*, 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979); *State v. Hunt*, Utah, 607 P.2d 297 (1980). We will reverse the trial court's finding of a valid waiver only if that finding is clearly in error or the court has abused its discretion. *State v. Meinhart*, Utah, 617 P.2d 355 (1980).

The totality of the circumstances indicates that defendant made a valid waiver. There is no evidence that the police made any threats or promises to induce him to waive his rights. He was fully apprised that he did not have to make a written statement. In fact, he twice received *Miranda* warnings before making his written statement—first, verbally by the police officer, and then by reading the printed form. By nodding his head when the officer asked if he understood the warning, defendant acknowledged his understanding of his rights. *North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979). Defendant's subsequent written statement must be viewed as having been made under a valid waiver. *State v. Hegelman, supra.* Accordingly, we hold that the trial court properly found that defendant's confession was voluntarily made and properly admitted the written statement into evidence.

## II

Defendant's second contention is that the State failed to establish the corpus delicti of rape prior to the trial court's admission of his written confession. Defendant asserts that some evidence of nonmarriage of defendant and the victim had to be adduced by the State to establish the corpus delicti and that no such evidence was presented.

This Court has not stated specifically what is required to establish the corpus delicti of rape. However, we have stated that the general standard to establish the corpus delicti of any crime is that "the State present evidence that the crime occurred, and that such crime was caused by someone's criminal conduct." *State v. Kimbel*, 620 P.2d 515, 517 (Utah 1980); *see also State v. Knoefler*, 563 P.2d 175, 176 (Utah 1977). Prior to the admission of defendant's written confession, the victim testified that she was raped. Two other witnesses also testified that they observed more than one person having intercourse with the victim. These testimonies are "ev-

idence that the crime occurred, and that such crime was caused by someone's criminal conduct"; therefore, independent corroborative evidence of the corpus delicti of the crime of rape was presented prior to admission of defendant's written confession.

■ Nevertheless, nonmarriage is an essential element of the crime of rape. U.C.A., 1953, § 76–5–402. The State has the burden of proving all elements of the crime, and if it fails to do so, the defendant is entitled to an acquittal. In the instant case, no witness was questioned as to whether the victim was the wife of defendant or of any other participant. There was also no other direct evidence concerning the victim's nonmarriage to defendant. However, the fact that there was no direct evidence is not conclusive. This same issue was decided in *State v. Housekeeper*, 588 P.2d 139 (Utah 1978), where this Court held that nonmarriage may be proved by circumstantial evidence. In the instant case, defendant was convicted of intentionally aiding or encouraging another, not the victim's spouse, to have sexual intercourse with her without her consent. In his written confession, he admitted holding the victim while at least three other individuals had intercourse with her. Thus, there is evidence in the record to support the inference that at least two of the actors could *not* have been legally married to the victim. The State therefore met its burden of proof on this element of the crime charged.

### III

■ Defendant next contends that a written statement given to the police the day after the incident by one of the boys as to what he had heard and observed was improperly admitted into evidence because of lack of foundation and because the statement was hearsay. The written statement was received into evidence only after the maker of it, when called as a witness for the prosecution, could not remember some of the events recounted in his statement. We find no foundational deficiency. The maker of the statement was personally on the high school grounds with the group of boys and had full opportunity to perceive the events he described. Rule 602, Utah Rules of Evidence, states:

A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself.

■ The witness's statement was admissible nonhearsay under Rule 801(d)(1)(A), Utah Rules of Evidence, which states:

(d) Statements which are not hearsay. A statement is not hearsay if

(1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement and the statement is (A) inconsistent with his testimony or the witness denies having made the statement or has forgotten. . . .

When the prosecutor asked the witness if he saw what happened to the victim, he answered "no." The prosecutor then referred the witness to his prior written statement to refresh his memory. When the witness still could not recall an utterance made by another boy, which the witness had mentioned in his written statement, the prosecutor offered the written statement into evidence. Due to the witness's inconsistency and abrupt forgetfulness, the trial court properly received the statement into evidence.

■ The utterance, made by the other boy, "let's do this to her," was spoken as the boys were chasing the two girls. Defendant argues that this utterance was double hearsay and should have been excluded from evidence. Assuming the statement was offered to prove the truth of the matter asserted and there was no applicable hearsay exception, it should have been excised from the written statement. However, the utterance was ambiguous and did not purport to reflect on defendant's or any other person's participation in the crime which followed. It was simply background and a preliminary event leading up to the incident. Its inclusion in the written state-

ment was innocuous and could not have prejudiced defendant in any respect. Utah R.Crim.P. 30. Therefore, we find the admission of the utterance was not prejudicial error.

## IV

 Defendant lastly contends that the trial court erred by refusing to instruct the jury that specific intent is an essential element of the crime of rape. The terms "general intent" and "specific intent" are no longer used in our present criminal code which refers to "culpable mental states." U.C.A., 1953, § 76–2–102 provides as follows:

> Every offense not involving strict liability shall require a culpable mental state, and when the definition of the offense does not specify a culpable mental state and the offense does not involve strict liability, intent, knowledge, or recklessness shall suffice to establish criminal responsibility.

Since the rape statute, section 76–5–402, does not require any specific mental state, the crime may be proved by an intentional, knowing, or reckless mental state. The trial court instructed the jury that defendant could not be convicted unless he acted intentionally or with knowledge. The court then defined "intentionally" and "knowingly." The jury was properly instructed on the mental state required. The trial court did not err in refusing to give defendant's requested instruction.

We have reviewed other assignments of error made by defendant and find them lacking merit. The convictions are affirmed.

HALL, C.J., and DURHAM and ZIMMERMAN, JJ., concur.

STEWART, A.C.J., concurs in the result.