**STATE of Utah, Plaintiff and Appellee,**

v.

**Rogelio Limonta LEYVA, Defendant and Appellant.**

**No. 940758–CA.**

Court of Appeals of Utah.

Nov. 9, 1995.

Elizabeth Hunt and Ronald S. Fujino, Salt Lake City, for Appellant.

Marian Decker and Jan Graham, Salt Lake City, for Appellee.

Before ORME, BENCH and BILLINGS, JJ.

## OPINION

BILLINGS, Judge:

Defendant, Rogelio Limonta Leyva, appeals from a judgment and conviction for Failure to Stop/Respond to Command of Officer, a third degree felony, in violation of Utah Code Ann. § 41–6–13.5 (Supp.1995). Defendant claims the trial court erred when it failed to suppress the defendant's statements in violation of his Fifth Amendment right against compulsory self-incrimination. We reverse and remand for a new trial.

## FACTS

While on patrol duty, a Utah Highway Patrol trooper noticed a yellow car that was "sagging badly to one side." Surprised that it was able to pass inspection, the trooper ran a license plate check on the car. The check revealed that the license plate belonged to a different car. Based on this violation, the trooper turned on his emergency lights and siren. A high speed chase ensued. The chase ended when defendant crashed at the bottom of a freeway off-ramp.

The trooper immediately handcuffed defendant. Without reading him his *Miranda* rights, the trooper questioned defendant. Defendant's pre-*Miranda* statements were suppressed by the trial court and are not at issue on appeal.

Approximately thirty minutes later, the trooper informed defendant of his *Miranda* rights. When the trooper asked defendant if he understood his rights, defendant responded "Yes." The trooper then asked defendant, "Having these rights in mind do you wish to talk to us now?" Defendant answered, "I don't know." The trooper responded, "You don't have to answer questions if you don't want to. It is up to you." Defendant nodded his head affirmatively. The trooper then asked, "So why did you run?" Defendant responded, "The plates are on the wrong car."

The trial judge denied defendant's motion to suppress his incriminating statement. Defendant on appeal claims the trial court's ruling was in error because he equivocally invoked his *Miranda* rights and the trooper solicited incriminating remarks rather than clarifying his intention.

## STANDARD OF REVIEW

On appeal, defendant claims the trial court erred by not suppressing his post-*Miranda* inculpatory statements. Defendant claims he equivocally invoked his *Miranda* rights and thus the arresting officer should have asked him only clarifying questions rather than soliciting his incriminating statement.

This court reviews the trial court's conclusion of a valid *Miranda* waiver for correctness, *State v. Pena,* 869 P.2d 932, 941 (Utah 1994); *State v. Sampson,* 808 P.2d 1100, 1111 (Utah App.1990); however, be-

cause of "variability of ... factual settings" we grant a measure of discretion to the trial judge. *Pena,* 869 P.2d at 941.[1]

## ISSUE

This case presents the important question of whether Utah case law on the equivocal invocation of *Miranda* rights has been wholly displaced by the recent decision of the United States Supreme Court in *Davis v. United States,* —— U.S. ——, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). To answer this question, we discuss the development of the rule of *Miranda,* prior Utah case law on equivocal invocations, and the United States Supreme Court's decision in *Davis v. United States.*

### I. *Miranda v. Arizona*

 *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), established procedural safeguards aimed at protecting a defendant's Fifth Amendment right against self-incrimination and Sixth Amendment right to counsel. Specifically, statements made by a defendant in custody are not admissible as evidence unless the defendant is told of his *Miranda* rights, and the defendant "knowingly and intelligently waive[s] these rights and agrees to answer questions." 384 U.S. at 479, 86 S.Ct. at 1630. Once the defendant is informed of his *Miranda* rights, the defendant may either invoke his right to remain silent or to have counsel present (scenario I), or he may waive his rights and speak with law enforcement officials (scenario II).

 Under scenario I, *Miranda* held that once a defendant indicates

in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege;

any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise.

*Id.* at 473–74, 86 S.Ct. at 1627–28. If the right to remain silent is invoked, the right must be "scrupulously honored" and the defendant is not subject to further interrogation until a reasonable amount of time has elapsed. *Michigan v. Mosley,* 423 U.S. 96, 104, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975). *Miranda* established a similar standard for the Sixth Amendment right to counsel. *Miranda,* 384 U.S. at 444–45, 86 S.Ct. at 1612. If the right to counsel is invoked, the defendant is not subject to further interrogation until counsel has been made available to him. *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981).

### II. Equivocal Invocation of *Miranda* Rights

For a variety of reasons, including poor command of the English language, and fear or intimidation, defendants often respond in equivocal or ambiguous language when their *Miranda* rights are explained. Courts have adopted one of three approaches to deal with equivocal invocation of *Miranda* rights. At one extreme, courts require that upon an equivocal reference to *Miranda* rights all questioning must cease. *See, e.g., People v. Superior Court,* 15 Cal.3d 729, 125 Cal.Rptr. 798, 802–03, 542 P.2d 1390, 1394–95 (1975) (en banc), *cert. denied,* 429 U.S. 816, 97 S.Ct. 58, 50 L.Ed.2d 76 (1976); *Ochoa v. State,* 573 S.W.2d 796, 800–01 (Tex.Crim.App.1978). At the other extreme, courts require that a defendant's *Miranda* reference be clear before it is recognized as an invocation of *Miranda* rights. *See, e.g., People v. Krueger,* 82 Ill.2d 305, 45 Ill.Dec. 186, 189, 412 N.E.2d 537, 540 (1980). The great majority of courts, howev-

1. Judge Bench takes us to task for not deferring to the trial court's determination in this "fact sensitive" arena because we cannot "post a fence line that will delineate the trial court's discretionary pasture." We respectfully disagree. The pasture has clearly been fenced by prior controlling authority on waiver and equivocal responses. *State v. Wood,* 868 P.2d 70, 85 (Utah 1993); *State v. Gutierrez,* 864 P.2d 894, 901 (Utah App. 1993); *State v. Sampson,* 808 P.2d 1100, 1109

(Utah App.1990); *State v. Griffin,* 754 P.2d 965, 969 (Utah App.1988). The trial court's legal determination here is simply outside the fence line.

Further, we note that the trial court is in no better position than we are to determine waiver in this case. The facts were not in dispute. The trial court relied on the same written transcript of the police interrogation of defendant that we review on appeal.

er, have adopted a middle ground. Upon an equivocal reference to *Miranda* rights, all questioning must cease except for those questions designed to clarify the defendant's equivocal statement. *See, e.g., United States v. March,* 999 F.2d 456, 461–62 (10th Cir. 1993); *United States v. Mendoza–Cecelia,* 963 F.2d 1467, 1472 (11th Cir.1992); *United States v. Gotay,* 844 F.2d 971, 975 (2d Cir. 1988); *United States v. Fouche,* 833 F.2d 1284, 1287 (9th Cir.1987); *United States v. Porter,* 776 F.2d 370, 370 (1st Cir.1985) (en banc); *Thompson v. Wainwright,* 601 F.2d 768, 771–72 (5th Cir.1979) (en banc); *People v. Benjamin,* 732 P.2d 1167, 1171 (Colo.1987); *Crawford v. State,* 580 A.2d 571, 576–77 (Del. 1990); *Martinez v. State,* 564 So.2d 1071, 1074 (1990); *State v. Moulds,* 105 Idaho 880, 673 P.2d 1074, 1082 (Ct.App.1983); *State v. Robinson,* 427 N.W.2d 217, 223 (Minn.1988).

This court adopted the middle approach in *State v. Griffin,* 754 P.2d 965, 969 (Utah App.1988), which was subsequently confirmed by the Utah Supreme Court in *State v. Wood,* 868 P.2d 70, 85 (Utah 1993); *see also State v. Gutierrez,* 864 P.2d 894, 901 (Utah App.1993); *State v. Sampson,* 808 P.2d 1100, 1109 (Utah App.1990). Utah courts have required that a defendant's equivocal assertion of *Miranda* rights be clarified before interrogation can continue. Nothing more than a "simple[ ] straightforward effort to clarify the request" is required. *Wood,* 868 P.2d at 84. However, statements that merely acknowledge or reaffirm the defendant's *Miranda* rights do not serve as clarifying statements. *Gutierrez,* 864 P.2d at 902.

A defendant may waive his *Miranda* rights. However, the state bears the onerous burden of establishing a valid waiver. A valid waiver "must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege." *Edwards,* 451 U.S. at 482, 101 S.Ct. at 1884; *Sampson,* 808 P.2d at 1108. Furthermore, a defendant who has equivocally invoked his *Miranda* rights (scenario I) cannot waive those rights until and unless law enforcement officials clarify the defendant's equivocal statement. *See Sampson,* 808 P.2d at 1113. Otherwise, "au-

thorities through 'badgering' or 'overreaching'—explicit or subtle, deliberate or unintentional—might otherwise wear down the accused and persuade him to incriminate himself notwithstanding his earlier [*Miranda* ] request." *Smith v. Illinois,* 469 U.S. 91, 98, 105 S.Ct. 490, 494, 83 L.Ed.2d 488 (1984) (per curiam) (brackets omitted). "[W]hen an accused has invoked his [*Miranda* rights] during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Edwards,* 451 U.S. at 484, 101 S.Ct. at 1884–85; *Wood,* 868 P.2d at 83.

After a valid waiver of *Miranda* rights, a defendant may subsequently reinvoke his *Miranda* rights (scenario II). *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612. Because *Miranda* stated that the defendant may invoke his rights *"in any manner,* at any time prior to or *during questioning," Id.* at 473–74, 86 S.Ct. at 1627 (emphasis added), Utah courts have not previously distinguished between equivocal invocation of *Miranda* rights that come before a valid waiver (scenario I) from those that come after a valid waiver (scenario II). *Gutierrez,* 864 P.2d at 894. Under either scenario, police are required to cease questioning except for the limited purpose of clarifying the defendant's equivocal request. *Id.*

In the present case, the trooper properly apprised defendant of his *Miranda* rights. When the trooper asked defendant if he understood those rights, defendant responded, "Yes." Thereafter, the trooper asked defendant whether he would waive his *Miranda* rights and answer questions. Defendant responded, "I don't know." The trooper responded, "You don't have to answer questions if you don't want to. It is up to you." Defendant nodded his head affirmatively. The trooper then asked, "So why did you run?" The defendant responded, "The plates are on the wrong car."

Defendant argues on appeal that his response was an equivocal invocation of the right to remain silent and thus the interrogation should have ceased except for the limit-

ed purpose of clarifying defendant's equivocal statement.

■ This court has clearly held that an "arguably equivocal" statement qualifies as an invocation of *Miranda* rights. *Gutierrez*, 864 P.2d at 901. Arguably equivocal "indicates that defendant need only show that it is open to argument that one of the meanings of [the defendant's] statement was a desire to terminate questioning." *Id.* at 902.

■ Defendant's statement was made in response to a question. Therefore, in order to appreciate the full meaning of the answer, we must view it in light of the question. The trooper's question was, "Having these rights in mind, do you want to talk to us now?" Defendant responded, "I do not know." The most plausible interpretation of defendant's response is, "I don't know [if I want to talk to you now]." This statement, in light of the question, is an arguably equivocal invocation of the right to remain silent. The trooper also understood defendant's statement to be an equivocal request to remain silent; his response was that defendant did not have to talk if he did not want to.

The trooper's response was similar to the officer's response in *Gutierrez*, which this court held was not a clarifying statement. In *Gutierrez*, the officers stated, "You don't have to," in response to defendant's equivocal reference to remain silent and then continued their interrogation. *Id.* This court stated that "[a]lthough [the officer's] response indicates an acknowledgement of a right to remain silent, it did not serve to clarify defendant's intent in making this remark." *Id.* Analogously, the trooper's response, "You don't have to answer the question if you don't want to. It is up to you," was not a clarifying statement. It was merely an acknowledgment of defendant's right to remain silent rather than an effort to clarify defendant's response.

■ Moreover, defendant's subsequent affirmative nod could be understood to simply express his understanding that he did not need to talk to the trooper. The State argues that defendant's affirmative nod coupled with his "unhesitating and incriminating" response demonstrates a valid waiver.

Any alleged waiver, however, came *after* defendant equivocally invoked his right to remain silent (scenario I). The State cannot establish a valid waiver when the defendant utters an equivocal reference which is arguably a request to invoke his *Miranda* rights, unless the state first clarifies the defendant's equivocal *Miranda* reference. *See Sampson*, 808 P.2d at 1113. To allow police to continue interrogating the defendant and then use the "accused's subsequent responses to cast doubt on the adequacy of the initial request *itself* is ... intolerable," *Smith*, 469 U.S. at 98–99, 105 S.Ct. at 494, and "would clearly frustrate the purpose of *Miranda* by allowing repeated rounds of questioning to undermine the will of the person being questioned." *Mosley*, 423 U.S. at 102, 96 S.Ct. at 326. Under controlling Utah law, defendant's statement and conduct constituted an equivocal invocation of his *Miranda* rights. Therefore, the trooper's questions should have been limited to only clarifying questions. They were not.

### III. *Davis v. United States*

The State contends that even if defendant's statement was an equivocal invocation of *Miranda* rights, under *Davis v. United States*, —— U.S. ——, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994), the trooper was not limited to solely asking clarifying questions, and therefore defendant's subsequent conduct and incriminating statements constitute a valid waiver. We disagree and hold that *Davis* does not mandate a different result in this case.

In *Davis*, the defendant was informed of his *Miranda* rights which he knowingly and voluntarily waived "both orally and in writing." *Id.* at ——, 114 S.Ct. at 2353. During the post-waiver interview (scenario II), the defendant stated, "Maybe I should talk to a lawyer." *Id.* The interviewing agent reminded the defendant of his rights and that they were not going to continue questioning unless they clarified whether the defendant in fact was requesting counsel. *Id.* The defendant responded, "No, I'm not asking for a lawyer." *Id.* Having clarified the defendant's equivocal statement, the agent continued interrogating the defendant. A short

time later the defendant stated, "I think I want a lawyer before I say anything else." *Id.* The questioning ceased.

The issue in *Davis* was whether the Supreme Court was willing "to extend *Edwards* and require law enforcement officials to cease questioning immediately upon the making of an ambiguous or equivocal reference to an attorney." *Id.* at ——, 114 S.Ct. at 2355. To better understand the holding in *Davis,* we review *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). In *Edwards,* detectives informed the defendant of his *Miranda* rights. The defendant "stated that he understood his rights, and was willing to submit to questioning." *Edwards,* 451 U.S. at 478, 101 S.Ct. at 1882. During the post-waiver interrogation (scenario II) the defendant stated, "I want an attorney before making a deal." *Id.* at 479, 101 S.Ct. at 1882. The questioning ceased and the defendant was taken to jail. The next morning, before the defendant had spoken to counsel, two different detectives again informed the defendant of his *Miranda* rights and asked the defendant if he was willing to talk. *Id.* Edwards proceeded to implicate himself in the crime.

Thus, in *Edwards,* the defendant had voluntarily, knowingly, and unequivocally waived his right to counsel after the first *Miranda* warnings were given, and subsequently reinvoked his *Miranda* rights when he requested the assistance of counsel during the first interrogation. The issue in *Edwards* was whether a valid waiver could be established by demonstrating the defendant's willingness to answer police-initiated questioning *after* defendant had reinvoked his

right to counsel, but *before* counsel was actually made available. The *Edwards* Court held that even if the defendant is reinformed of his *Miranda* rights, "it is inconsistent with *Miranda* and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel" until counsel is actually made available to the defendant. *Id.* at 485, 101 S.Ct. at 1885.

In light of *Edwards,* therefore, the issue in *Davis* was whether the Supreme Court would expand the "clearly asserted" language in *Edwards* to encompass both unequivocal and equivocal requests for counsel made after a valid waiver. The plurality refused to expand *Edwards,* stating: "We therefore hold that, *after* a knowing and voluntary waiver of the *Miranda* rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney." *Davis,* —— U.S. at ——, 114 S.Ct. at 2356 (emphasis added). Thus, *Davis* explicitly states that its holding applies only to equivocal *Miranda* references that come *after* a valid *Miranda* waiver. Furthermore, throughout the opinion the Court often refers to the rule of *Edwards* and consistently indicates that the discussion refers to equivocal *Miranda* references that occur during interrogation—that is, after a valid waiver when police are free to question the defendant.[2]

Our interpretation that *Davis* applies only to scenario II cases is consistent with Justice Souter's opinion, concurring in judgment, and joined by three other justices. Justice Souter explained:

---

**2.** "But if a suspect requests counsel at any time *during* the interview, he is not subject to further questioning until a lawyer has been made available or the subject himself reinitiates conversation." *Davis v. United States,* —— U.S. ——, ————, 114 S.Ct. 2350, 2354–55, 129 L.Ed.2d 362 (1994) (emphasis added). "[O]ur precedents do not require the *cessation* of questioning." *Id.* at ——, 114 S.Ct. at 2355 (emphasis added). "If the statement fails to meet the requisite level of clarity, *Edwards* does not require that the officers *stop* questioning the suspect." *Id.* (emphasis added). "We decline petitioner's invitation to extend *Edwards* and require law enforcement officials to *cease* questioning immediately upon the making of an ambiguous

or equivocal reference to an attorney." *Id.* (emphasis added). "A suspect who knowingly and voluntarily waives his right to counsel after having that right explained to him has indicated his willingness to deal with the police unassisted. Although *Edwards* provides an additional protection—if a suspect *subsequently* requests an attorney, questioning must *cease*—it is one that must be affirmatively invoked by the suspect." *Id.* at ——, 114 S.Ct. at 2356 (emphasis added). "If a suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to *stop* questioning him." *Id.* (emphasis added). "Unless the suspect actually requests an attorney, questioning may *continue.*" *Id.* at ——, 114 S.Ct. at 2357 (emphasis added).

[T]he standard governing waivers as expressed in these statements [cannot] be deflected away by drawing a distinction between initial waivers of *Miranda* rights and *subsequent decisions to reinvoke them,* on the theory that so long as the burden to demonstrate waiver rests on the government, it is only fair to make the suspect shoulder a burden of showing a clear *subsequent assertion. Miranda* itself discredited the legitimacy of any such distinction.... [stating that] "there can be no questioning" if the suspect "indicates in any manner and at any stage of the process that he wishes to consult with an attorney." "At any stage" obviously includes the stage after *initial waivers* and the commencement of questioning, and "indicates in any manner" is a rule plainly in tension with the indication "with a vengeance," that the Court would require for exercise of the "continuous" right at some point *after initial waiver.*

*Id.* at ——, 114 S.Ct. at 2361 (Souter, J., concurring in judgment) (citations and brackets omitted) (emphasis added). The plurality does not challenge the concurring opinion's interpretation of its holding, further suggesting that *Davis* applies only to equivocal references to *Miranda* rights that come after the state has established a valid initial waiver.

▮▮▮▮ Finally, policy considerations persuade us that the holding in *Davis* applies only in scenario II post-waiver contexts. Under this reading of *Davis,* the state still bears the initial burden of proving that the defendant voluntarily, knowingly and clearly waived his *Miranda* rights before police can question the defendant. An equivocal invocation of the right, or an ambiguous waiver must be clarified. However, after the state has clearly established a valid waiver, the burden shifts to the defendant to clearly reinvoke his *Miranda* rights. This distinc-

tion can be justified on the grounds that the defendant had a previous opportunity to freely exercise his constitutional rights which he voluntarily, knowingly and clearly waived. The Court's reasoning in *Davis,* however, does not extend to equivocal invocation of *Miranda* rights prior to a valid waiver. This would ignore the state's burden of establishing a valid voluntary, knowing and clear waiver. Accordingly, we conclude that Utah law, in a scenario I case, is unchanged by the holding in *Davis.*[3]

Returning to the facts of the present appeal, defendant's equivocal response came before a valid waiver of his *Miranda* rights. Therefore, the equivocal request came prior to a valid waiver (scenario I) and the trooper's questions should have been limited to clarifying defendant's equivocal statement.

Based upon the foregoing, we hold that the trial court erred in not suppressing defendant's incriminating statements which came before he made a valid waiver of his right to remain silent. We therefore reverse and remand for a new trial.

ORME, P.J., concurs.

BENCH, Judge (dissenting):

Once again this court refuses to give proper deference to a trial court's determination of ultimate fact. *See State v. Richardson,* 843 P.2d 517, 521 (Utah App.1992) (Bench, P.J., concurring). The main opinion ignores what the trial court determined, and boldly concludes that "defendant's statement and conduct constituted an equivocal invocation of his *Miranda* rights."

From the evidence presented, the trial court found that Trooper Wassmer asked the defendant if he understood his *Miranda* rights, to which the defendant replied, "Yes." The trial court concluded that the defendant understood his *Miranda* rights.

---

3. *Davis,* however, changes previous *Miranda* law in Utah under scenario II as follows: After an initial valid waiver, the burden shifts to the defendant to show that he clearly reinvoked his *Miranda* rights. —— U.S. at ——, 114 S.Ct. at 2356. An equivocal request for counsel or to remain silent is insufficient to reinvoke a defendant's *Miranda* rights. *Id.* The reinvocation of *Miranda* rights must be "sufficiently clear that a

reasonable police officer in the circumstances would understand the statement to be a request for an attorney" or to remain silent. *Id.* at ——, 114 S.Ct. at 2355. Police may continue to question a defendant who has knowingly, voluntarily and clearly waived his *Miranda* rights "unless and until" the defendant unequivocally expresses his desire to reinvoke his *Miranda* rights. *Id.* at ——, 114 S.Ct. at 2356.

The trial court also found that Trooper Wassmer asked the defendant if he would answer some questions. The defendant stated, "I don't know." Trooper Wassmer then said, "You don't have to answer questions if you don't want to. It's up to you." The defendant nodded his head in an affirmative manner and then unhesitatingly gave an incriminating response to the trooper's follow-up questions. From the evidence presented, the trial court concluded that the defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights.

Our standard of review is set forth in the now famous case of *State v. Pena*, 869 P.2d 932 (Utah 1994). *Pena* held as follows:

> A waiver of *Miranda* rights may be inferred from a defendant's "actions and words," and is based on the "totality of the circumstances." We review the trial court's legal conclusion of a valid waiver for correctness. However, *this standard of review grants a measure of discretion to the trial court because of the variability of the factual settings.*

*Id.* at 940–41 (citations omitted) (emphasis added). The main opinion improperly relies on pre-*Pena* cases to support its less deferential standard of review. *See* main opinion at note 1.

Based upon the totality of the circumstances of this case, the trial court concluded that the defendant intended to waive his *Miranda* rights.[1] *Pena* requires that we accord deference to this fact-sensitive conclusion unless we are able to post a fence line that will delineate the trial court's discretionary pasture. *Id.* Rather than attempting to post a fence line, however, the main opinion simply decides the question de novo. Under *Pena*, that is not our prerogative.

I would defer to the trial court's determination that defendant waived his *Miranda* rights. Because the trial court found waiver, the main opinion's discussion about what officers can do in the face of equivocation is rendered both unnecessary and unwarranted.

In any event, any error in admitting defendant's inculpatory statements was harmless. This appeal is from defendant's conviction for failure to respond to an officer's signal to stop. The case involved a high speed chase, which ended when defendant crashed on a freeway off-ramp. There was abundant evidence presented, in the form of Trooper Wassmer's own testimony, to establish the elements of the offense.

I would affirm defendant's conviction.

---

**1.** The "totality of the circumstances" test is a weighing-of-the-evidence determination usually reserved to trial courts. *See State v. Barnhart,* 850 P.2d 473, 476 (Utah App.1993); *State v. Rochell,* 850 P.2d 480, 484 n. 2 (Utah App.1993) (plurality opinion).