STATE of Utah, Plaintiff and Petitioner,

v.

Rogelio Limonta LEYVA, Defendant and Respondent.

No. 960020.

Supreme Court of Utah.

Aug. 19, 1997.

Rehearing Denied Nov. 7, 1997.

Jan Graham, Atty. Gen., Marian Decker, Asst. Atty. Gen., Robert L. Stott, Salt Lake City, for Plaintiff.

Joan C. Watt, Salt Lake City, for Defendant.

RUSSON, Justice:

We granted certiorari in this case to answer the following questions: (1) Did the United States Supreme Court, in *Davis v. United States*, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994), overrule this court's holding in *State v. Wood*, 868 P.2d 70 (Utah 1993), that an ambiguous reference to *Miranda*[1] rights must be clarified before interrogation of a suspect can begin? (2) Does the court of appeals' decision below (*State v. Leyva*, 906 P.2d 894 (Utah.Ct.App.1995)) conflict with Utah Supreme Court and United States Supreme Court precedent regarding implied waivers of *Miranda* rights?

## BACKGROUND

On the evening of July 24, 1994, Utah Highway Patrol Trooper John Wassmer was driving south on Interstate 15 in Salt Lake County, Utah. As he proceeded, Wassmer spotted a car that was leaning noticeably to one side. Wassmer decided to run a license plate check to determine whether the car had passed inspection. From the check, Wassmer learned that the license plate had actually been issued to a different car. Wassmer then attempted to pull the car over.

After Wassmer turned on his emergency lights and siren, the driver of the car, Rogelio Leyva, sped up in an apparent attempt to elude Wassmer. Wassmer followed Leyva on the freeway at high speeds for several miles, from approximately 45th South to 90th South, before Leyva exited the freeway. Leyva was driving too fast, however, to negotiate the turn at the bottom of the 90th South exit ramp, and he crashed. Wassmer, with gun drawn, approached Leyva's car. Upon reaching the car, Wassmer handcuffed Leyva.

Approximately a half hour later, Wassmer informed Leyva of his *Miranda* rights and asked Leyva if he understood those rights. Leyva responded, "Yes." Wassmer then asked, "Having these rights in mind, do you want to talk to us now?" Leyva responded, "I don't know." Wassmer then added: "You don't have to answer questions if you don't want to. It is up to you." Instead of orally responding to this statement, Leyva merely nodded his head. Wassmer then proceeded to question Leyva, asking, "So why did you run?" Leyva responded, "The plate's on the wrong car." Approximately fifteen minutes later, while Wassmer was transporting Leyva to the jail, Leyva asked Wassmer, "So what are you charging me with?" Wassmer responded, "Evading, improper registration, no driver's license, no insurance, and possession of cocaine." Leyva then said, "Hey, man, I'll admit to everything else, but the cocaine isn't mine." Wassmer asked, "So you admit you saw my lights and were trying to run from me?" Leyva replied, "Yeah, I was, but the cocaine isn't mine."[2]

At trial, Leyva moved to suppress his incriminating statements. Leyva argued, among other things, that he had made an equivocal invocation of his right to remain silent and that Wassmer should have at that point limited his inquiry to clarifying Leyva's intent. After an evidentiary hearing, the trial court denied the motion to suppress, concluding that Leyva "knowingly, intelligently, and voluntarily waived his *Miranda* rights." Leyva was subsequently convicted by a jury of failing to respond to a police officer's signal in violation of section 41–6–13.5 of the Utah Code.

Leyva appealed his conviction to the court of appeals. *State v. Leyva*, 906 P.2d 894 (Utah.Ct.App.1995). As part of that appeal, Leyva again argued that his statements were obtained in violation of his *Miranda* rights

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. Because Leyva was tried only on the charge of failing to respond to a police officer's signal, the prosecutor agreed not to refer to cocaine possession in front of the jury. Thus, at trial, Wassmer

testified that when Leyva asked what he was being charged with, Wassmer responded, "Evading." Wassmer also testified that when he asked Leyva if he saw his lights and was trying to run, Leyva responded, "Yeah, I was."

because Wassmer failed to limit his inquiry to clarifying Leyva's equivocal invocation of those rights as required by *State v. Wood*, 868 P.2d 70 (Utah 1993). In response, the State argued that under *Davis v. United States*, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994), when faced with an ambiguous reference to *Miranda* rights, officers are not required to limit their inquiry to clarifying the intent of the suspect. Rather, the State asserted, *Davis* held that unless the suspect made his intentions clear, the officers could continue questioning.

The court of appeals held that *Wood* and *Davis* were not in conflict. The court of appeals held that immediately after an officer has informed a suspect of his *Miranda* rights, the officer is required to determine if the suspect chooses to waive those rights ("prewaiver scenario"). If at that point the suspect responds ambiguously, then *Wood* requires the officer to limit his inquiry to clarifying the suspect's response. The court of appeals further held that *Davis* applies only after the suspect has clearly waived his *Miranda* rights and then later equivocally reinvokes them ("postwaiver scenario"). The court of appeals held that in such a case officers are not required to clarify the suspect's intent, since the burden lies with the suspect to clearly invoke his *Miranda* rights after waiving them. Thus, the court of appeals held that Wassmer should have limited his inquiry to clarifying Leyva's response. Because he did not, the trial court should have suppressed Leyva's incriminating statements. *Leyva*, 906 P.2d at 900–01.

## STANDARD OF REVIEW

■ "On certiorari, we review the decision of the court of appeals, not the decision of the trial court. In doing so, this court adopts the same standard of review used by the court of appeals: questions of law are reviewed for correctness, and the trial court's factual findings are reversed only if clearly erroneous." *State v. Harmon*, 910 P.2d 1196, 1199 (Utah 1995) (citations omitted); *see also Hebertson v. Willowcreek Plaza*, 923 P.2d 1389, 1392 (Utah 1996). An appellate court should "review the trial court's legal conclusion of a valid waiver [of *Miranda* rights] for

correctness. However, this standard of review grants a measure of discretion to the trial court because of the variability of the factual settings." *State v. Pena*, 869 P.2d 932, 941 (Utah 1994) (citations omitted). A lower court's interpretation of binding case law presents a question of law which we review for correctness. *See Stevensen v. Goodson*, 924 P.2d 339, 346 (Utah 1996); *accord State v. Richardson*, 843 P.2d 517, 518 (Utah.Ct.App.1992).

## ANALYSIS

### I. DISCUSSION OF *DAVIS* AND *WOOD*

The State argues initially that the United States Supreme Court's decision in *Davis* overruled our decision in *Wood*, relied upon by the court of appeals. We disagree.

#### A. State v. Wood

In *State v. Wood*, 868 P.2d 70 (Utah 1993), defendant Lance Conway Wood appealed his conviction of murder in the first degree, aggravated sexual assault, and aggravated kidnaping in connection with the murder of Gordon Church in November 1988. Michael Archuleta was also involved in the murder. Shortly after the murder, Wood contacted his parole officer and informed him that Archuleta had killed someone. Wood met with his parole officer and other police officers later that day and recounted his version of the events surrounding the murder. *Id.* at 76. The next morning, Wood directed law enforcement officials to the scene of the murder and to Church's body. After some time at the murder scene, a police officer, Captain Robert Dekker, drove Wood to a spot under a freeway overpass. *Id.* at 81. Dekker then gave Wood his *Miranda* warnings, intending to interview Wood in relation to the murder. As soon as Dekker concluded the warnings, Wood "wondered aloud whether he should consult an attorney regarding protective custody." In an effort to clarify Wood's meaning, Dekker asked whether Wood wanted an attorney "for questioning purposes right now." Wood said that he did not and that he wanted to talk to Dekker. Dekker proceeded to interview and take a statement from him. *Id.*

At trial, Wood challenged the introduction of the statement given to Dekker on the ground that his statement regarding consulting an attorney "amounted to a request for counsel, barring any further questioning" by Dekker. *Id.* at 82. This court held that Wood's reference to an attorney did not amount to an invocation of his right to counsel and that Wood had made a "voluntary, knowing, and intelligent waiver of that right." *Id.* at 83. We held that Wood's reference to an attorney accompanied by his statement regarding protective custody at least made it "unclear" whether he was invoking his constitutional right to counsel. *Id.* This court then went on to hold:

> [W]hen a defendant makes an ambiguous or equivocal request for an attorney, questioning with respect to the subject matter of the investigation must immediately stop, and any further questioning must be limited to clarifying the request. If the defendant then makes clear that he or she desires to have counsel present, further questioning is prohibited.

*Id.* at 85. This court determined that Dekker had "complied with this rule," and held that the trial court was correct in not granting Wood's motion to suppress. *Id.*

### B. Davis v. United States

In *Davis v. United States,* 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994), defendant Robert L. Davis, a member of the United States Navy, was convicted of murder in connection with the beating death of Keith Shackleford in October 1988. Approximately a month following the beating, Davis was interviewed in connection with the murder at the office of the Naval Investigative Service. Prior to any questioning,

> [a]s required by military law, the agents advised [Davis] that he was a suspect in the killing, that he was not required to make a statement, that any statement could be used against him at a trial by court-martial, and that he was entitled to speak with an attorney and have an attorney present during questioning.

*Id.* at 454, 114 S.Ct. at 2352–53. Davis waived those rights both orally and in writing. About an hour and a half later, Davis said, "Maybe I should talk to a lawyer." The agents stopped questioning Davis about the murder and focused on determining if he in fact wanted a lawyer before questioning resumed. Davis responded that he was not asking for a lawyer and that he did not want a lawyer. After a break, the agents reminded Davis of his rights and then continued questioning him. Approximately an hour later, Davis announced, "I think I want a lawyer before I say anything else," whereupon, the interrogation ceased. At his court-martial proceeding, Davis moved to suppress his statements made during the interview. However, the military judge denied the motion. *Id.* at 455, 114 S.Ct. at 2353. The United States Court of Military Appeals affirmed, holding that Davis's reference to an attorney was ambiguous and that the agents properly clarified his statement before proceeding with the interview. *Id.* at 456, 114 S.Ct. at 2353–54.

The United States Supreme Court affirmed but took the opportunity to discuss whether and when an officer must cease questioning a suspect and clarify a suspect's ambiguous or equivocal reference to a *Miranda* right. In briefly recounting the development of the prophylactic *Miranda* rules, the Court stated:

> If a suspect effectively *waives* his right to counsel *after receiving* the *Miranda* warnings, law enforcement officers are free to question him. But if a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation.

*Id.* at 458, 114 S.Ct. at 2354–55 (citations omitted) (emphasis added). However, the Court held that if the suspect is not reasonably clear in his reference to an attorney, officers are not required to stop questioning or focus on clarifying the suspect's statement. The Court stated that "the suspect must unambiguously request counsel," and if his "statement fails to meet the requisite level of clarity," then the officers are not required to stop questioning the suspect. *Id.* at 459, 114 S.Ct. at 2355. The Court then explicitly held that "after a knowing and

voluntary waiver of the *Miranda* rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney." *Id.* at 461, 114 S.Ct. at 2356.

### C. Discussion

■ The State now argues that *Wood* was overruled by *Davis* and that law enforcement officers are no longer required to clarify a suspect's ambiguous or equivocal reference to *Miranda* rights in either a pre- or a postwaiver scenario. However, the State reads *Davis* too broadly. The Court in *Davis* made clear that its holding applied only to a suspect's attempt to *reinvoke* his *Miranda* rights "*after* a knowing and voluntary waiver" of the same. *Id.* (emphasis added). While recognizing that its "clear assertion" rule might "disadvantage some suspects," the *Davis* Court stated:

> [T]he *primary protection* afforded suspects subject to custodial interrogation is the *Miranda warnings themselves.* . . . A suspect who knowingly and voluntarily *waives* his right to counsel after having that right explained to him has indicated his willingness to deal with the police unassisted. Although [*Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981),] provides an additional protection—if a suspect subsequently requests an attorney, questioning must cease—it is one that must be *affirmatively invoked* by the suspect.

*Id.* at 460–61 (emphasis added). Plainly, the Court in *Davis* did not intend its holding to extend to prewaiver scenarios, and we see no reason to so extend it.

■ The questions of waiver of *Miranda* rights and of postwaiver invocation of those rights are entirely separate. *Smith v. Illinois,* 469 U.S. 91, 98, 105 S.Ct. 490, 494, 83 L.Ed.2d 488 (1984). Regarding initial waiver of those rights, the United States Supreme Court has stated that "a heavy burden" rests on law enforcement officers "to demonstrate that the defendant knowingly and intelligently waived" his *Miranda* rights. *Miranda,* 384 U.S. at 475, 86 S.Ct. at 1628. *Wood's* requirement that an officer faced with an ambiguous response to the officer's reading

of a suspect's *Miranda* rights limit his questioning to clarifying the suspect's response is entirely consistent with this heavy burden. *See Wood,* 868 P.2d at 85. However, once a suspect has clearly, knowingly, and intelligently waived his *Miranda* rights, *Davis* places the requirement of clarity with respect to postwaiver invocation of those rights on the suspect. As the majority in *Davis* describes it, the suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis,* 512 U.S. at 459, 114 S.Ct. at 2355. *Davis's* holding did not address the prewaiver scenario, and therefore *Wood's* prewaiver clarification requirement is not inconsistent with *Davis.* Thus, we decline to disrupt established precedent unnecessarily, and we hold that *Davis* did not overrule *Wood.*

Although our holding in *Wood* may appear broad enough to cover both pre- and postwaiver scenarios, 868 P.2d at 85, the factual circumstances at issue in that case clearly relate to the question of Wood's initial waiver of his *Miranda* rights. 868 P.2d at 83. In any event, to the extent that *Wood* may be read more broadly than *Davis,* we are constrained to follow *Davis.* In determining the content and scope of *Miranda*-based protections, we have looked to the United States Constitution as interpreted by the United States Supreme Court rather than to the Constitution of Utah. In *State v. Mirquet,* 914 P.2d 1144 (Utah 1996), we stated: "[T]his Court has never specifically held that *Miranda*-type warnings are required under the Utah Constitution. Thus, to the extent that [*Wood*] and other cases state that [*Salt Lake City v. Carner,* 664 P.2d 1168 (Utah 1983),] afforded broader protections than those available under United States Supreme Court decisions applying *Miranda* law, we disavow those statements." *Mirquet,* 914 P.2d at 1147 n. 2 (citations omitted). Therefore, in light of the United States Supreme Court's holding in *Davis,* and in light of our statement in *Mirquet,* the requirement in *Wood* that an officer limit his questioning to clarifying a suspect's ambiguous or equivocal statement must be limited to prewaiver scenarios.

## II. IMPLIED WAIVERS

The State argues that a rule requiring law enforcement officers to clarify a suspect's ambiguous or equivocal response to *Miranda* warnings will eliminate the possibility of ever finding an implied waiver and therefore will conflict with prior Utah Supreme Court decisions. The State directs our attention to *State v. Calamity*, 735 P.2d 39 (Utah 1987), and *State v. Kelly*, 718 P.2d 385 (Utah 1986), cases with facts the State claims are "analytically indistinguishable" from the case before us, as two examples of instances where we found implied waivers of *Miranda* rights. We disagree.

Initially, we note that if a rule requiring clarification of a suspect's ambiguous or equivocal statement is in conflict in any way with either *Calamity* or *Kelly*, such conflict arose out of our decision in *Wood*, a case decided six years after *Calamity*, not out of the court of appeals' decision below, as the State argues. Thus, to the extent that either *Calamity* or *Kelly* is inconsistent with *Wood*, they were superseded by *Wood*.

More important, we do not think that *Wood*'s clarification requirement precludes the finding of an implied waiver under appropriate circumstances. We reaffirm today that a waiver of a suspect's rights "may be inferred from his acknowledgment of his understanding of his rights and his subsequent course of conduct." *State v. Hegelman*, 717 P.2d 1348, 1349 (Utah 1986) (citing *North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979)); *see also Pena*, 869 P.2d at 940 (holding same only few months after *Wood* was decided). "We look at the totality of the circumstances to determine if a suspect has made a valid waiver." 717 P.2d at 1349. Although the "mere silence" of a suspect may not be enough to support the finding of a valid implied waiver, "[t]hat does not mean that the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver, may never support a conclusion that defendant has waived his rights." *Butler*, 441 U.S. at 373, 99 S.Ct. at 1757. After an officer has informed a suspect of his *Miranda* rights and has determined that the suspect understands those rights, the officer must then determine if the suspect is willing to waive those rights and answer questions. If the suspect responds ambiguously or equivocally, the officer must then focus on clarifying the suspect's intent. According to *Wood*, "A simple, straightforward effort to clarify the request is appropriate." 868 P.2d at 84. If the officer has properly attempted to clarify the suspect's response and the suspect continues to respond ambiguously or equivocally, a valid implied waiver may still be found after a review of the totality of the circumstances.

In the case before us, Leyva acknowledged that he understood his rights as read to him by Wassmer. Wassmer then asked Leyva, "Having these rights in mind do you wish to talk to us now?" Leyva's response, however, was ambiguous: "I don't know." Wassmer then stated: "You don't have to answer questions if you don't want to. It is up to you." Leyva nodded in response to this statement and then answered the questions Wassmer put to him. The court of appeals held that Wassmer's statement "You don't have to answer questions if you don't want to. It's up to you" was not a sufficient attempt at clarifying Leyva's response, and, therefore, Leyva could not have waived his *Miranda* rights. However, we think that the totality of the circumstances leads to a different conclusion. After Wassmer made the above statement, Leyva nodded. While it is arguable whether Leyva's nod was an indication that he nevertheless wished to speak to Wassmer, Leyva's nod *at least* reflected his understanding that *he did not have to respond to questioning.* Yet, Leyva's incriminating response to Wassmer's next question was made *unhesitatingly.* Further, while Wassmer was transporting Leyva to jail, *Leyva initiated* the conversation which led to his admission that he had seen Wassmer's lights and had tried to run. Wassmer made a sufficient attempt to clarify Leyva's intent following Leyva's ambiguous response, and Leyva voluntarily and willingly responded after clearly indicating an understanding that he did not have to do so. We think that in light of the totality of the circumstances, therefore, Leyva knowingly and intelligently waived his

*Miranda* rights, and his statement was properly admitted by the trial court.

## CONCLUSION

In light of the foregoing, we agree with the court of appeals that the United States Supreme Court opinion in *Davis v. United States,* 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994), did not overrule this court's decision in *State v. Wood,* 868 P.2d 70 (Utah 1993). We further hold that *Wood*'s clarification requirement does not preclude the finding of an implied waiver of *Miranda* rights in an appropriate case. Finally, we reverse the court of appeals' determination that Leyva's statement should have been suppressed, reinstate the trial court's decision to deny Leyva's motion to suppress, and affirm Leyva's conviction.

ZIMMERMAN, C.J., STEWART, Associate C.J., and HOWE and DURHAM, JJ., concur in Justice RUSSON'S opinion.