# United States Court of Appeals

## For the First Circuit

No. 02-2173

SAROURT NOM,

Petitioner, Appellant,

v.

LUIS SPENCER and THOMAS F. REILLY,

Respondents, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Boudin, Chief Judge,

Lipez and Howard, Circuit Judges.

Daniel J. Johnedis for petitioner.
    Eva M. Badway, Assistant Attorney General, Criminal Bureau,
with whom Thomas F. Reilly, Attorney General, was on brief, for
respondent.

July 29, 2003

**LIPEZ, Circuit Judge**.  This petition for habeas corpus relief challenges the propriety of a question asked by a police officer after the petitioner had unambiguously invoked his Fifth Amendment right to counsel.

## I.

On September 13, 1995, a Middlesex Superior Court jury convicted the petitioner, Sarourt Nom ("Nom"), of the first degree murder of his wife and unlawful possession of a firearm.  The court sentenced Nom to life in prison.  On November 18, 1997, the Massachusetts Supreme Judicial Court ("SJC") affirmed the convictions.  After exhausting his further state court appeals,[1] Nom petitioned the federal district court for habeas corpus relief under 28 U.S.C. § 2254, claiming (1) that his Fifth Amendment right to counsel was violated when, after a prior invocation of his right to counsel, a police officer asked Nom why he had requested counsel, and (2) that his Sixth Amendment right to effective assistance of counsel was violated by trial counsel's failure to object to the trial judge's jury charge on malice.[2]  The district

---

[1]  Nom filed an untimely petition for re-hearing, which the SJC denied on January 26, 1998.  On November 10, 1998, Nom filed a motion for a new trial in the Middlesex Superior Court based on ineffective assistance of counsel, which was denied on May 27, 1999.  On February 28, 2000, a single justice of the SJC denied Nom leave to appeal the Superior Court's decision.

[2]  Nom also petitioned for habeas relief on the ground that the admission of statements which he made without having received his Miranda warnings violated his Fifth Amendment rights.  Nom voluntarily dismissed this claim prior to the district court's

court denied the petition on both grounds, and issued a certificate of appealability on the Fifth Amendment issue.  We affirm.

## II.

In its opinion on Nom's direct appeal, the SJC summarized the relevant facts.  Commonwealth v. Nom, 686 N.E.2d 1017, 1020 (Mass. 1997).  On April 17, 1994, in Lowell, Massachusetts, Nom's wife was found dead in Nom's parked car with a gunshot wound to the head.  That morning, police officers from the Lowell police department spoke by telephone with Nom, who agreed to accompany them to the police station.  In response to questioning at the police station, Nom initially told Inspector John Guilfoyle and Trooper James M. Connolly that he had remained at home throughout the night.  He stated that his wife had left at some point during the evening with his car and that he had not seen her or his car since then.  At this point, the police officers had not given Nom his Miranda warning. See Miranda v. Arizona, 384 U.S. 436 (1966).

Subsequently, the police received information from Nom's family members that he had gone out with his wife the previous evening and had not remained home as he stated.  In response to this information, a police officer advised Nom of his Miranda rights at approximately 12:35 p.m., and Nom immediately waived those rights.  However, when the police subsequently asked to test his hands for gunshot residue, Nom stated that he wanted an

decision.

-3-

attorney present. All questioning ceased and all police personnel left the room. Trooper Connolly then reentered and sat down but did not speak. Nom shrugged his shoulders and Connolly did the same. Nom then said, "I admit it." Connolly replied, "What?" and Nom then said, contrary to his initial statement, that he was out at a restaurant with his wife the night of the shooting. Inspector Guilfoyle then reentered the room and asked Nom why he wanted an attorney. Nom replied that he wanted an attorney only for the purpose of witnessing the gunshot residue test and that he would continue to talk to the police without an attorney present.[3] At this point, Nom was again given his <u>Miranda</u> warnings orally and by a card which he signed.

In the ensuing hours, Nom gave the police a second and then a third written statement regarding his involvement in the shooting. In the second statement he claimed that, while he was in the restroom of the restaurant, his wife and a man with whom she had been flirting left in Nom's car. In the third statement, Nom said that he saw his wife leaving the restaurant with the man. He then followed them to the car and got into an altercation with the

---

[3] The trial court elaborated that when Guilfoyle asked Nom why he wanted an attorney, "Nom answered that he wanted an attorney to witness the testing of his hands. He was asked whether there was any other reason and said, 'No.' He was asked if he would continue to speak to the police without an attorney and he indicated that he would." <u>Commonwealth</u> v. <u>Nom</u>, No. 94-864, slip op. at 6 (Mass. Dist. Ct. June 21, 1995)(order on defendant's motion to suppress).

man, which ended when the man fired a handgun at Nom and drove off with Nom's wife. Soon after giving this last statement, Nom was arrested. The next morning, after learning that the police had gathered evidence identifying him as the shooter, Nom gave a fourth written statement asserting that he had shot his wife accidentally during an argument.

Nom moved to suppress the statement he made before the police advised him of his Miranda rights (about his wife leaving with his car); the trial court granted this suppression motion. Nom also moved to suppress his statements made after he received his Miranda warnings, arguing that (1) they were all tainted by the fact that his first statement was secured in violation of his Miranda rights, and (2) some of the statements were made in response to questions he was asked after he had unambiguously invoked his right to counsel. The trial judge denied this motion to suppress on two grounds: (1) the second, third and fourth statements were not tainted because his initial statement was not incriminating--Nom said that he had neither seen nor heard from his wife since she left home with his car the previous evening;[4] and

---

[4] There is a presumption that a statement made following the violation of Miranda rights is tainted. "This presumption may be overcome by showing either: (1) after the illegally obtained statement, there was a break in the stream of events that sufficiently insulated the post-Miranda statement from the tainted one; or (2) the illegally obtained statement did not incriminate the defendant, or, as it is more colloquially put, the cat was not out of the bag." Commonwealth v. Nom, No. 94-864, slip op. at 11 (quoting Commonwealth v. Osachuk, 635 N.E.2d 1192, 1196 (1994)).

(2) Nom's request for counsel was "scrupulously honored" since all questioning ceased and was only resumed when Nom initiated further questioning by spontaneously stating "I admit it." The trial court found that Inspector Guilfoyle's inquiry as to why Nom wanted an attorney was "reasonable under the circumstances given . . . [Nom's] spontaneous statement to Connolly." Commonwealth v. Nom, No. 94-864, slip op. at 13. On direct appeal, the SJC agreed with these determinations.

On March 6, 2000, Nom filed a timely habeas petition in the United States District Court for the District of Massachusetts asserting, inter alia, that Inspector Guilfoyle violated his Fifth Amendment right to counsel when he asked Nom why he had requested a lawyer. The district court denied the writ: "Although the questioning of a suspect's request for an attorney is constitutionally impermissible under ordinary circumstances, the SJC did not unreasonably apply federal law to the facts as it found them in this case." Nom v. Spencer, No. 00-10413, 2002 U.S. Dist. LEXIS 16099, at *6 (D. Mass. Aug. 28, 2002). Petitioner now appeals.

**III.**

The standard of review is set forth in the AEDPA statute, 28 U.S.C. § 2244-2266 (2002). On the grounds pertinent to this case, a federal court may grant habeas relief to a state prisoner if it finds, inter alia, that the state court adjudication

-6-

"resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law. . . ." 28 U.S.C. § 2254(d)(1). This section "defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court." Williams v. Taylor, 529 U.S. 362, 404-05 (2000). Under the "contrary to" prong, a federal court may grant the writ if the state court "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Id. at 412-13. Under the "unreasonable application" prong, a federal court may grant the writ if the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. With respect to this second prong, the state court's determination must be unreasonable, not simply incorrect, and unreasonableness is an objective standard. Id. at 410-11. "If it is a close question whether the state decision is in error, then the state decision cannot be an unreasonable application." McCambridge v. Hall, 303 F.3d 24, 36 (1st Cir. 2002).

## IV.

In affirming the trial court's conclusion that Nom's Fifth Amendment right to counsel was not violated, the SJC noted

the trial court's finding that "[t]hroughout the morning of his custody, the defendant spoke freely with the police," Nom, 686 N.E.2d at 1022, and only requested an attorney when the police attempted to test his hands for blood and gunshot residue. At that point, "all questioning ceased" until Nom "initiated further conversation by stating '<u>I admit it.</u>'" <u>Id.</u> (emphasis in original). The SJC agreed with the trial court that Inspector Guilfoyle's subsequent inquiry as to why Nom wanted an attorney was "no more than a request for a clarification of the inconsistency between his earlier request and his subsequent initiation of conversation with Trooper Connolly," and was "neither designed nor reasonably likely to elicit an incriminating response." <u>Id.</u>

Nom argues that the SJC's decision was contrary to the Supreme Court's decision in <u>Smith</u> v. <u>Illinois</u>, 469 U.S. 91, 100 (1984), because it used the inconsistency between Nom's request for counsel and his subsequent initiation of conversation with Trooper Connolly to cast retrospective ambiguity on the clarity of his "crystal clear" invocation of his right to have an attorney present. Nom also argues that the SJC's decision was "an unreasonable application of clearly established federal law, as determined by the Supreme Court" in <u>Miranda</u>, and <u>Edwards</u> v. <u>Arizona</u>, 451 U.S. 477 (1981), and their progeny. We turn to those contentions.

**A. "Contrary to . . . clearly established Federal law"**

To assess Nom's argument that the SJC's decision was in direct conflict with the Supreme Court's holding in Smith v. Illinois, we first note the careful distinction drawn by the Supreme Court in that case between the defendant's initial invocation of the right to counsel and his subsequent waiver of that right.

> The courts below were able to construe Smith's request for counsel as "ambiguous" only by looking to Smith's subsequent responses to continued police questioning and by concluding that, "considered in total," Smith's "statements" were equivocal. This line of analysis is unprecedented and untenable. . . . Where nothing about the request for counsel or the circumstances leading up to the request would render it ambiguous, all questioning must cease. In these circumstances, an accused's subsequent statements are relevant only to the question whether the accused waived the right he had invoked. Invocation and waiver are entirely distinct inquiries, and the two must not be blurred by merging them together.

Smith, 469 U.S. at 97-98 (internal citations omitted).

The trial court always described Nom's initial request for counsel as unambiguous.

> The Court finds that upon Nom's request for an attorney, all conversation ceased. Nom reinitiated conversation when he asserted, "I admit it." Inspector Guilfoyle's attempt to clarify Nom's statement that he wanted an attorney was appropriate in the context of this situation.

-9-

<u>Commonwealth</u> v. <u>Nom</u>, No. 94-864, slip op. at 13. The SJC noted this finding in its recitation of the facts: "When the police subsequently requested to test his hands for gunshot residue, however, the defendant stated that he wanted an attorney present. The questioning ceased, and all police personnel left the room." <u>Nom</u>, 686 N.E.2d at 1020. These statements by the trial court and the SJC indicate that the clarity of Nom's request for an attorney was never in question--the police officers, the trial court and the SJC all understood that he had unambiguously invoked his right to an attorney.

Moreover, the SJC correctly stated that once a suspect has invoked his right to counsel, police interrogation must cease and may only be resumed if the suspect initiated further communication with the police. However, as the SJC stated, "the burden remains upon the prosecution to show that subsequent events indicated a waiver of the Fifth Amendment right to have counsel present during the interrogation." <u>Nom</u>, 686 N.E.2d at 1022 (quoting <u>Oregon</u> v. <u>Bradshaw</u>, 462 U.S. 1039, 1044 (1983)). Contrary to Nom's interpretation, the SJC did not interpret Inspector Guilfoyle's question about why Nom wanted an attorney as an attempt to clarify Nom's ambiguous invocation of his right to counsel. Instead, the SJC agreed with the trial court that the question was an attempt to clarify whether, by initiating further communication with the police, Nom was waiving his clearly invoked right to

-10-

counsel. "Guilfoyle's asking why he wanted an attorney in these circumstances was no more than a request for a clarification of the inconsistency between his earlier request and his subsequent initiation of conversation with Trooper Connolly." Nom, 686 N.E.2d at 1022.

Understandably, Nom cites the SJC's statement that Inspector Guilfoyle's question was "a response to the defendant's ambiguously invoking his right to counsel and then initiating further conversation with the statement 'I admit it.'" (emphasis added). Read in isolation, the placement of "ambiguously" immediately before "invoking" suggests that the SJC did not heed the Supreme Court's admonition in Smith that "invocation and waiver are entirely distinct inquiries, and the two must not be blurred by merging them together." Smith, 469 U.S. at 98. However, in light of the entirety of the SJC's opinion and the trial court's decision, we conclude that the SJC was focusing on the issue of waiver (i.e. the initiation of conversation by Nom as waiver of his previously invoked right to counsel). Hence, the SJC recognized the principle of Smith that "an accused's subsequent statements were relevant only to the question whether the accused waived the right he had invoked," Id., and its decision was not contrary to clearly established federal law.

**B.   "Unreasonable application of clearly established Federal law"**

Having concluded that the SJC recognized the centrality of the waiver issue in Nom's appeal, we must now address Nom's contention that the SJC's resolution of this issue was an unreasonable application of clearly established federal law.

After Nom initiated further communication by stating "I admit it," the police did not forge ahead with questioning Nom about this admission.  Instead, Inspector Guilfoyle sought to clarify whether Nom's statement was intended as a waiver of his right to counsel by asking him why he wanted an attorney.  In <u>Davis</u> v. <u>United States</u>, 512 U.S. 452 (1994), the Supreme Court held that "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect <u>might</u> be invoking the right to counsel, our precedents do not require the cessation of questioning."  <u>Id.</u>, at 459.  The Supreme Court then elaborated on this point:

> when the officers conducting the questioning reasonably do not know whether or not the suspect wants a lawyer, a rule requiring the immediate cessation of questioning "would transform the <u>Miranda</u> safeguards into wholly irrational obstacles to legitimate police investigative activity," . . . because it would needlessly prevent the police from questioning a suspect in the absence of counsel even if the suspect did not wish to have a lawyer present. Nothing in <u>Edwards</u> requires the provision of counsel to a suspect who consents to answer questions without the assistance of a lawyer.

-12-

<u>Id.</u> at 460 (internal citations omitted).

To be sure, the Supreme Court in <u>Davis</u> was addressing an ambiguous request for counsel, not an ambiguous waiver of a prior request for counsel. However, a defendant who has previously invoked counsel unambiguously could, as Nom did here, volunteer a statement in the presence of a police officer subsequent to that invocation that creates an ambiguity in the mind of a reasonable police officer about whether the defendant is now waiving his right to counsel. In the presence of such an ambiguous waiver of a prior request for counsel, the observation of the Supreme Court in <u>Davis</u> seems apt: "When a suspect makes an ambiguous or equivocal statement it will often be good police practice for the interviewing officer to clarify whether or not he actually wants an attorney." <u>Id.</u> at 461.[5] As the SJC noted, "in ordinary circumstances, there would be no proper basis for an interrogator's

_____

[5] We recently held in <u>James</u> v. <u>Marshall</u>, 322 F.3d 103 (1st Cir. 2003) that police questioning designed to clarify an ambiguous invocation of a suspect's Fifth Amendment rights

> is precisely the kind of "good police practice" described by the Supreme Court in <u>Davis</u>, where the Supreme Court declined to adopt a rule requiring officers to ask clarifying questions in the face of an ambiguous assertion of the right to counsel, but noted that "when a suspect makes an ambiguous or equivocal statement it will often be good police practice for the interviewing officers to clarify whether or not he actually wants an attorney."

<u>Id.</u> at 109 (quoting <u>Davis</u>, 512 U.S. at 461.).

-13-

asking a suspect his reason for requesting an attorney." <u>Nom</u>, 686 N.E.2d at 1023. However, in the unusual circumstances of this case, the SJC agreed with the trial court that Inspector Guilfoyle's question to Nom about why he wanted an attorney present was reasonably designed to clarify an ambiguity created by Nom himself with his spontaneous statement, "I admit it." Nom's answer to Guilfoyle's question--that he wanted the attorney present only for the purpose of witnessing the gunshot residue test--indicates that Nom understood the question, and that he knowingly and voluntarily waived his right to have an attorney present during the subsequent interrogation by the officers. The application by the SJC of the principles of <u>Davis</u> to the facts of this case was not an unreasonable application of clearly established federal law.

**<u>Affirmed</u>**.