The State of Alabama has filed this appeal pursuant to 15.7(a), Ala. R.Crim. P., seeking reversal of the circuit court's order suppressing Cassandra Marie Collins's confession. We affirm.
On August 9, 2002, a Montgomery County grand jury indicted Collins for manslaughter and other charges related to her alleged involvement in a fatal hit-and-run accident on the night of July 21, 2001. On July 26, 2001, Collins gave a videotaped statement to officers of the Montgomery Police Department.[1] In that statement, Collins admitted that, in the early morning hours of July 21, she was driving and "wasn't paying any attention to the road at all," and was turned around and looking for something in her purse, which was on the backseat of the vehicle. (Supp. R. 18.) While she was turned around, Collins said, she hit something and her car swerved. When she looked up, she noticed that her windshield was broken. (Supp. R. 18.) She turned and drove back to the area to *Page 88 
see what she had hit. She saw a girl lying on the ground beside the road, and she saw that a man and a woman had stopped their cars at the side of the road. (Supp. R. 19.) Collins said she realized that she must have hit the girl, but she "freaked out" and simply returned to her job at Baptist Hospital. She did not contact the police, even though she saw on the news the following day that the girl had been killed. (Supp. R. 21-22.)
On September 2, 2003, Collins filed a motion to suppress the videotaped statement, which she gave without counsel's presence. She alleged that she did not understand the right to counsel that had been read to her as part of theMirandarights, and that, therefore, she had not voluntarily waived those rights.[2] Specifically, Collins alleged that the police concealed vital information from her. She also argued that her waiver of the right to counsel was not knowing and voluntary and that she actually did invoke her right to counsel before she gave the statement. (C. 6-7.) At the hearing on the motion to suppress, defense counsel argued that Collins "did not know what her rights were. . . ." (R. 2.) The trial judge noted that, after the Miranda rights were read to Collins, she asked how long it would take to get an attorney, and neither officer answered the question. The prosecutor argued that the videotape demonstrated that theMiranda rights were read to Collins and that she signed the form indicating that she understood those rights and that she was waiving them. The judge acknowledged that the issue was "a close call," but stated that Collins's question regarding how long she would have to wait for an attorney should have been answered. The judge stated that "it was obvious that this lady was thinking about" whether she needed or wanted an attorney. (R. 7.) The judge granted the motion to suppress. She explained that her ruling was based on her viewing the videotaped statement and her determination, from the defendant's question about how long it would take to get an attorney, "that the defendant was trying to get into [sic] an attorney; [']I might need an attorney.[']" (R. 10.) The judge determined that Collins had not knowingly or voluntarily waived her right to an attorney. (R. 10-11.) We agree and we affirm.
The only evidence presented to the trial court was the videotape of Collins's statement to the police; the videotape presents no conflicting evidence. The facts in this case are undisputed, and the trial court made only legal findings, applying the law to these undisputed facts. Therefore, we apply a de novo standard of review. State v. Hill,690 So.2d 1201, 1203-04 (Ala. 1996); State v. White,854 So.2d 636, 638 (Ala.Crim.App. 2003); State v. Thomas,843 So.2d 834, 838-39 (Ala.Crim.App. 2002); State v.Smith, 785 So.2d 1169, 1173 (Ala.Crim.App. 2000).
In Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966), the Supreme Court set forth the procedural safe-guards required during a custodial interrogation. The Court stated, in part:
 "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes *Page 89 
to consult with an attorney before speaking there can be no questioning."
Miranda, 384 U.S. at 444-45, 86 S.Ct. 1602,384 U.S. 436 (1966).
The State has the burden of establishing the admissibility of a defendant's out-of-court statement. This Court has stated:
 "The general rule is that a confession or other inculpatory statement is prima facie involuntary and inadmissible and the burden is on the State to prove by a preponderance of the evidence that such a confession or statement is voluntary and admissible. See, e.g., Ex parte Price, 725 So.2d 1063
(Ala. 1998). To prove voluntariness, the State must establish that the defendant `made an independent and informed choice of his own free will, that he possessed the capability to do so, and that his will was not overborne by pressures and circumstances swirling around him.' Lewis v. State, 535 So.2d 228, 235 (Ala.Crim.App. 1988). If the confession or inculpatory statement is the result of custodial interrogation, the State must also prove that the defendant was properly advised of, and that he voluntarily waived, his Miranda rights. See Ex parte Johnson, 620 So.2d 709 (Ala. 1993), and Waldrop v. State, 859 So.2d 1138
(Ala.Crim.App. 2000), aff'd, 859 So.2d 1181 (Ala. 2002)."
Eggers v. State, 914 So.2d 883, 898-99
(Ala.Crim.App. 2004).
The Supreme Court has discussed how a court can determine whether a waiver of Miranda rights was voluntary:
 "First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the `totality of the circumstances surrounding the interrogation' reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived. Fare v. Michael C, 442 U.S. 707, 725 (1979). See also North Carolina v. Butler, 441 U.S. 369, 374-375 (1979)."
Moron v. Burbine, 475 U.S. 412, 421, 106 S.Ct. 1135,89 L.Ed.2d 410 (1986).
With these principles in mind, we turn to the evidence presented via the videotaped statement. The videotape indicates that Collins was in an office with two police officers. One officer read the Miranda rights to Collins. The officer stated during the initial portion of the videotape that he had read Collins her rights earlier that day. (Supp. R. 14.) After the officer read those rights to Collins, she said, "Okay, let me ask you a question[. It] says that I have, I can have a lawyer[.] I will have to wait to get one." The officer answered, "And that's correct." Collins asked, "And I will have to wait til when?" The officer did not respond. (Supp. R. 15.) Instead, the officer looked away from Collins and cast his eyes downward, onto the waiver-of-rights form, which he appeared to fill out while Collins waited for an answer to her question. After approximately 10 seconds passed, the officer placed the waiver-of-rights form in front of Collins and asked her to read the paragraph on the form. Collins read, "I fully understand the foregoing statement and do willingly agree to answer questions. I understand and know what I am doing. No promise or threats have been made to me by anyone and no pressure of any kind has been made against me by anyone." (Supp. R. 15.) The officer asked Collins if she understood the rights. She did not answer orally, but she signed the waiver-of-rights *Page 90 
form. (Supp. R. 12.) She then answered all of the officer's questions about the accident.
At the suppression hearing, the trial judge stated that she was concerned because Collins's question about the length of time it would take for her to get an attorney was never answered. (R. 3.) The court also indicated its concern that Collins "was thinking about" getting an attorney. (R. 7.) The judge stated that the officers should have answered Collins's question and, because they did not, Collins did not knowingly and voluntarily waive her right to counsel. (R. 8.) We agree.
We have previously addressed a similar question in another case involving a waiver of Miranda rights, Statev. McDevitt, 484 So.2d 543 (Ala.Crim.App. 1985). In that case, after Miranda rights were read to McDevitt and the police asked him whether he was willing to talk, he simply smiled. The Miranda rights were read to him later by Lt. Acker, before an interview, and McDevitt stated that he understood his rights and wanted to talk to Lt. Acker. Lt. Acker then asked McDevitt if he had spoken to an attorney, and McDevitt said that he had not. Lt. Acker told McDevitt that he thought McDevitt could use an attorney; McDevitt stated that he could not afford one and that he did not need one. He also said that an attorney would just take his money. Lt. Acker then interviewed McDevitt for approximately two hours. When federal agents attempted to interview McDevitt the next day, he told them he wanted to talk to his attorney first and that his attorney had not returned his telephone call. He agreed to talk to the agents "off the record." The agents informed a detective that McDevitt had requested an attorney. Over the next several days, other interviews were conducted by other officers and agents, and McDevitt confessed. Lt. Acker saw McDevitt at the jail on the day after he had confessed and asked McDevitt if he had an attorney yet. McDevitt told him that he had not obtained counsel and that he did not need an attorney. Approximately one month later, McDevitt was declared indigent and an attorney was appointed to represent him.
The trial court granted McDevitt's pre-trial motion to suppress his confession after determining that the prosecution had failed to establish that McDevitt knowingly and intelligently waived his Miranda rights during any of the interviews. McDevitt, 484 So.2d at 547. This Court affirmed. In our opinion in that case, we acknowledged that McDevitt told Lt. Acker that he understood his rights and was willing to talk to him, but we also noted:
 "`An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the Miranda case. . . . The courts must presume that a defendant did not waive his rights; the prosecution's burden is great. . . .'
 "North Carolina v. Butler, 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979). In light of McDevitt's immediate subsequent statement that he `[c]ouldn't afford one, didn't need one,' the oral `waiver' became unclear and ambiguous."
McDevitt, 484 So.2d at 548 (footnote omitted).
Judge Patterson, writing for this Court, stated that we were unwilling to "give absolute deference to the isolated utterance of waiver" given to Lt. Acker and to *Page 91 
disregard McDevitt's other statements and actions.McDevitt, 484 So.2d at 549. We found "that the implication of these facts in their totality is that McDevitt did not fully understand his right to appointed counsel."Id.
Relevant to the case before us, we further held inMcDevitt that McDevitt's initial "waiver" of rights and his response to Lt. Acker's suggestion that McDevitt could benefit from counsel "clearly created a blatant ambiguity, thus obligating the officer to ensure that McDevitt fully understood his right to counsel." McDevitt, 484 So.2d at 549. We further stated:
 "`If the accused manifests a lack of understanding as to the meaning of these rights, or how they directly affect him, the interrogators must make special efforts to secure his understanding. Repetition of the warnings, and the giving of hypothetical factual examples may become necessary. These precautions will help to ensure that any waiver subsequently made is "knowing and intelligent."'
 "19 Am.Jur., Proof of Facts § 11 at 21 (1967). See also id. § 8 at 18. It was the obligation of the interrogator not to ignore or gloss over the possible implications of McDevitt's response. He should have made an inquiry to clarify the ambiguity and to specifically advise McDevitt, at that time, that appointed counsel would be provided, if desired, before the questioning proceeded."
McDevitt, 484 So.2d at 549 (emphasis added).
Finally, in McDevitt, we noted that our holding in the case was not to be interpreted too broadly, but that when a suspect indicates that he or she might not have fully understood the Miranda warnings, the interrogating officer has a duty to ensure that the suspect fully and correctly understood his rights. We stated that the "ritualistic reading" of the rights will not always be sufficient to fulfill the prosecution's obligation.McDevitt, 484 So.2d at 550 (citing United Statesv. Rondon, 614 F.Supp. 667, 670 (S.D.N.Y.1985)).
Our holding in McDevitt controls here. As inMcDevitt, Collins made an ambiguous statement about counsel after the Miranda rights were read to her. Her first question to the officer indicated that she understood that she had the right to counsel, and that counsel might not be available to her immediately. The officer answered the question by indicating that Collins would have to wait for counsel. Collins then asked how long she would have to wait to obtain counsel. Collins's question indicated a desire for more information about the possible consequences of an in-vocation of her right to counsel, and that question was never answered. As in McDevitt, "It was the obligation of the interrogator not to ignore or gloss over the possible implications of [Collins's] response. He should have made an inquiry to clarify the ambiguity. . . ." McDevitt, 484 So.2d at 549.
The record indicates that Collins had retained counsel at trial. Therefore, at a minimum, in response to Collins's question regarding how long she would have to wait for an attorney, the officer interrogating Collins should have told Collins that she was free to contact her attorney before she answered any questions or that an attorney would be appointed if she was indigent. The officer should have clarified then whether Collins wanted to contact an attorney. Instead, the officer ignored Collins's question for several seconds while avoiding her gaze, and he then placed the waiver form in front of her for her signature. We note that the officer chose to answer the first question, informing her that she would have to wait for counsel, a response that might have encouraged Collins *Page 92 
to give a statement immediately. He chose not to answer the second question, the response to which, depending on his answer, might have encouraged her to invoke her right to counsel immediately. If the officer had determined that Collins could retain counsel and he told her that she could make a telephone call at that time, she might have invoked her right to do so. Because she did not receive an answer to her second question, Collins might have believed that several days would pass before she could contact an attorney.
As in McDevitt, we have before us a "waiver of rights" in that Collins signed the waiver-of-rights form the officer placed in front of her. However, as inMcDevitt,the totality of the circumstances prevents us from giving absolute deference to this form. Instead, we find that Collins's question, "And I will have to wait til when?" regarding the length of time it would take to get an attorney implies that she, perhaps, wanted to contact an attorney. This question should have been answered, and the interrogating officer should have clarified whether Collins was asking to talk to an attorney. The officer's failure to clarify the ambiguity before placing the waiver-of-rights form in front of Collins for her signature prevents us from determining that Collins's signature on the form satisfied the State's burden of proving that she knowingly and intelligently relinquished her rights. Without proof of a knowing and intelligent waiver, the trial court correctly granted Collins's motion to suppress the statement.
The State contends that Davis v. UnitedStates, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362
(1994), mandates a reversal of the trial court's ruling. InDavis, the United States Supreme Court held that, after a suspect waives his Miranda rights, questioning must cease during an interrogation only when the suspect makes an unambiguous and unequivocal invocation of the right to counsel. The United States Supreme Court did not in Davis create a requirement that officers ask clarifying questions when an ambiguous assertion of the right to counsel was made, although the Court acknowledged that asking questions for clarification would often be good practice for officers. In Davis,
the suspect made an equivocal statement regarding counsel after he had already waived his Miranda rights.Davis,512 U.S. at 461, 114 S.Ct. 2350 ("We therefore hold that, after a knowing and voluntary waiver of theMiranda rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney." (emphasis added)). This Court has not specifically considered whether Davis applies to pre-waiver situations, but other appellate courts have considered this issue. We agree with the analysis and decision as discussed inFreeman v. State, 158 Md.App. 402, 857 A.2d 557
(2004), and we adopt it here.
The Court in Freeman stated:
 "We are persuaded by the reasoning of the court in State v. Leyva, 951 P.2d 738 (Utah 1997), which distinguishes between an ambiguous response to an initial Miranda advisement and an equivocal post-waiver invocation. The Supreme Court of Utah declined to apply Davis to an ambiguous pre-waiver response, concluding that Davis was limited to a post-waiver ambiguous invocation of rights. Id. at 745. According to the Utah court, that scenario is an `entirely separate' issue from an ambiguous pre-waiver invocation. Id.
 "Noting that Davis did not `address' or `extend to prewaiver scenarios. . . .', the Utah court said that 'Davis made clear that its holding applied only to a suspect's attempt to reinvoke his Miranda *Page 93 
rights "after a knowing and voluntary waiver" of the same.' Id. (quoting Davis, 512 U.S. at 461, 114 S.Ct. 2350). Therefore, the Utah court concluded that an officer faced with an ambiguous response to an initial advisement of Miranda rights, i.e., at the pre-waiver stage, is limited to posing questions designed to clarify the suspect's ambiguous response. Id. Accord State v. Tuttle, 650 N.W.2d 20, 28 (S.D. 2002) (adopting Leyva and concluding that `[t]he Davis holding obviously applies to instances where suspects attempt to invoke Miranda rights after a knowing and voluntary waiver of those rights. Davis, in sum, applies to an equivocal postwaiver invocation of rights.').
 "We agree with the Utah court that a careful reading of Davis reveals that the Supreme Court's bright line rule, requiring an unequivocal assertion of the right to counsel, pertains to a situation in which the defendant had previously waived his right and then, during the interrogation, arguably sought to exercise his rights. Based on the foregoing, we decline to apply the rationale of Davis to our analysis of appellant's silence, because the silence occurred in a pre-waiver context."
Freeman, 158 Md.App. at 428-29, 857 A.2d at 572-73.
Therefore, we hold that Davis does not apply to this case. Collins's questions were directed to the delay involved in obtaining a lawyer, and she asked them before she signed the waiver-of-rights form. Because Collins did not waive her Miranda rights before she asked the questions about obtaining a lawyer, the ambiguity of her questions required the interrogating officer to ask follow-up questions to clarify the ambiguity. The United States Supreme Court's decision inDavis did not preclude the trial court from granting the relief Collins requested in her motion to suppress. To the contrary, because Collins asked, "And I will have towait til when?" (Supp. R. 15) (emphasis added), and because the officer ignored the question, there remained an ambiguity regarding whether Collins wanted to talk to an attorney. We find that, under the facts of this case, the officer had a duty to clarify on the record whether Collins wanted to contact her own attorney, whether she was indigent and needed appointed counsel, or whether she wanted to waive her Miranda rights and answer questions. From the record before us, we cannot find the knowing and voluntary waiver of rights required byMiranda.
The trial court correctly granted the motion to suppress; we affirm.
AFFIRMED.
McMILLAN, P.J., concurs.
SHAW, J., concurs in the result, with opinion.
BASCHAB, J., dissents, with opinion.
WISE, J., dissents.
[1] The videotape of the statement is in the record, as is the transcript of the statement. This Court has reviewed the videotape and the transcript.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694 (1966).