#24897-a-JKM

**2009 SD 37**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                Plaintiff and Appellant,

    v.

TAD AARON BLACKBURN,            Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT
OF THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE THOMAS L. TRIMBLE
Judge

\* \* \* \*

LAWRENCE E. LONG
Attorney General

ANDREW KNECHT
Assistant Attorney General         Attorneys for plaintiff
Pierre, South Dakota              and appellant.

PAUL R. WINTER                  Attorney for defendant
Rapid City, South Dakota         and appellee.

\* \* \* \*

ARGUED ON MARCH 25, 2009

OPINION FILED **05/13/09**

MEIERHENRY, Justice

[¶1.] Tad Blackburn is charged and awaiting trial for First Degree Murder, or in the alternative, Second Degree Murder in the death of his girlfriend, Tamara Magic. Prior to trial, Blackburn moved to suppress statements that he made to police during a police interrogation. The trial court granted his motion and suppressed portions of the interrogation. The trial court determined that Blackburn's statements to police were inadmissible because Blackburn's Fifth and Fourteenth Amendment rights to counsel had been violated. The State sought permission to appeal the trial court's suppression order.

***Police Questioning of Blackburn***

[¶2.] The incident that gave rise to the murder charge against Blackburn occurred on November 8, 2007, in Rapid City, South Dakota. Late in the evening, the police and an ambulance responded to an emergency call to the home of Magic. There they found Magic dead with multiple stab wounds and head trauma. The police sought Blackburn as a suspect.

[¶3.] Blackburn was stopped by law enforcement driving Magic's vehicle at approximately 1:00 a.m. on November 9. The police officer who stopped Blackburn determined that Blackburn had been drinking and that Blackburn was wanted for questioning in Magic's murder. The officer transported Blackburn to the police station for questioning.

[¶4.] The police interviewed Blackburn twice. The first interview occurred at approximately 2:00 a.m. on November 9, and a second interview occurred more than thirty hours later at approximately 10:00 a.m. on November 10. During the

first interview, Blackburn repeated that he was drunk, that he would not answer any questions until he was sober, and that he wanted a lawyer. Blackburn did not waive his *Miranda* rights during the first interview and made no admissions. The trial court determined that any statements made by Blackburn during the first interview were inadmissible for any purpose at trial.

## *Second Interview*

[¶5.] The morning of November 10, Blackburn requested to see Investigator Matt Sargent. At the beginning of the second interview, Investigator Sargent read Blackburn his *Miranda* rights as follows:

> **Sargent**: Alright. Before I ask, ask you any questions you must understand your rights. You have the continuing right to remain silent. Do you understand that?
> **Blackburn**: Yes sir.
> **Sargent**: Anything you say can be used as ev, used against you in court. Do you understand that?
> **Blackburn**: Yes sir.
> **Sargent**: You have the right to a lawyer for advice before we ask you any questions and to have a lawyer with you during questioning. Do you understand that?
> **Blackburn**: Yes sir.
> **Sargent**: If you cannot . . . afford a lawyer, one will be appointed for you before any questioning if you wish. You understand that?
> **Blackburn**: Ok.
> **Sargent**: You understand that?
> **Blackburn**: I understand that.
> **Sargent**: Ok. If you decide to answer questions now without a lawyer present, you will still have the right to stop quest, stop answering at any time until you talk to a lawyer. You understand that?
> **Blackburn**: Yes.
> **Sargent**: Yes?
> **Blackburn**: Yep.
> **Sargent**: Ok. Do you understand each of the rights I've just explained to you?
> **Blackburn**: Yes.

The video taped interview continues with the following questions and answers that involve the crux of this appeal:

> **Sargent**: Keeping these rights in mind, do you wish to talk to us now?
> **Blackburn**: Yes.
> **Sargent**: K.
> **Blackburn**: I mean I'd like, I'd like there to be a lawyer present just so I don't fuckin' step myself over the deep end or nothing else, but I mean at this point I really don't see why there needs to be one because I, I, really I want to know what you guys know. I was drunker an' shit the other night when I was talking to you. I was high on fuckin' cocaine and I really don't remember a whole lot of what I told you the other night, but I need to know what's going on, what so we can, fuckin', damage control. So what, what do they know Matt?
> **Sargent**: Tad come on.
> **Blackburn**: I'm telling you. What do they know?

The trial court found that Blackburn's answer was ambiguous and equivocal and as such, required Sargent to clarify whether Blackburn wanted a lawyer or wanted to proceed without a lawyer before continuing with the interrogation. Sargent did not clarify at that point and continued the interrogation. Blackburn eventually admitted (1) that he had been drunk and high on cocaine; (2) that he had been at Magic's house; (3) that as he attempted to leave, Magic grabbed him and he punched and then stabbed her several times with a knife; and (4) that after the knife handle broke, he hit her in the head with a rock. Only after these admissions did Sargent attempt to clarify Blackburn's earlier statement about wanting a lawyer.

> **Sargent**: I gotta ask you a question about a comment you made. You said you wanted to get a hold of your mom so you can get a lawyer.
> **Blackburn**: Yes sir.

>**Sargent**: Also, in, in the very first start to our interview you said you'd like something to the extent about having a lawyer present but you don't think it's necessary right now.
>**Blackburn**: Not, I don't, I don't feel like it's necessary right now because you know, you're sitting here.
>**\* \* \***
>**Sargent**: Right. I just want to make sure that you're not telling me that you want to stop this.
>**Blackburn**: No, no.
>**Sargent**: Ok.
>**Blackburn**: That, I'm, I'm, I'm not telling you that Matt. I just know that somewhere along the time and the proceedings.
>**Sargent**: Oh definitely.
>**Blackburn**: You know, I'm, I'm gonna need a lawyer. And I don't want, I don't want a PD man.
>**Sargent**: K. So that's the basis of that comment, is you don't want a PD though?
>**Blackburn**: Yeah, yeah it's, it's, it's, I'm not trying to stop the conversation.
>**Sargent**: Ok.
>**Blackburn**: You know what I'm saying. I'm will, I'll willingly answer your questions without a lawyer.
>**Sargent**: Ok.
>**Blackburn**: But some times during the proceedings you know I'd like to, I'd like to have contact with a lawyer.
>**Sargent**: Ok. Alright.
>**Blackburn**: You know. And I, I'm, I don't need one to speak through or nothing like that.

The trial court suppressed all of Blackburn's statements prior to this clarification that he did not want an attorney immediately. The State appeals raising one issue: Whether the trial court erred in suppressing certain statements that Blackburn made during his second interview with the police.

## ANALYSIS

[¶6.]     "We review a trial court's grant or denial of a motion to suppress alleged constitutional violations de novo." State v. Cottier, 2008 SD 79, ¶18, 755 NW2d 120, 128 (citing State v. Johnson, 2007 SD 86, ¶21, 739 NW2d 1, 8-9).

[¶7.]    The trial court determined that during the second interview: (1) Blackburn initiated the further discussion; (2) although he initiated further discussion, he made an equivocal reference to counsel, and because he had not already waived his right to counsel, the officers should have limited their further questioning to clarifying Blackburn's reference to counsel; (3) because the officers failed to get that clarification, his admissions or confession are inadmissible as substantive evidence up to the point toward the end of the interview when he eventually did clarify that he did not want an attorney; (4) the second interview was voluntarily given and, thus, usable for impeachment; (5) because the second interview was voluntary, Blackburn's statements at that second interview subsequent to the time when he ultimately did clarify that he did not need an attorney are admissible.

[¶8.]    Blackburn asserts that the trial court should have suppressed *all*, not only a portion, of the statements he made during the second interview.  Blackburn did not, however, file a petition for discretionary appeal or file a notice of review regarding this issue.  *See* SDCL 15-26A-22; *see also* State v. Koerner, 1999 SD 161, ¶4, 603 NW2d 718, 720 (notice of review filed in intermediate appeal); State v. Tapio, 432 NW2d 268, 269 (SD 1988) (notice of review filed in intermediate appeal). "This Court has consistently held that failure to comply with the notice of review requirements results in a waiver." A.L.S. Props., Silver Glen v. Graen, 465 NW2d 783, 787 (SD 1991) (citing Gratzfeld v. Bomgaars Supply, 391 NW2d 200 (SD 1986); Rowett v. McFarland, 394 NW2d 298 (SD 1986); Application of Northwestern Bell

Tel. Co., 326 NW2d 100 (SD 1982)). Therefore, we do not reach the issue of whether *all* statements in the second interview must be suppressed.

[¶9.] In a custodial interrogation, the government must prove that the accused knowingly and intelligently waived the right to counsel and the privilege against self-incrimination. Miranda v. Arizona, 384 US 436, 475 (1966) (citing Escobedo v. State of Illinois, 378 US 478, 490, n14 (1964)). The accused must be informed "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id*. at 444. The United States Supreme Court established a bright-line rule in *Edwards v. Arizona* that if the accused clearly asks for a lawyer during a custodial interrogation, the questioning must stop until a lawyer is present. 451 US 477, 484-85 (1981). The Court said, "an accused . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Id*. If the accused's request for a lawyer is ambiguous or equivocal at the time *Miranda* rights are given, the officers must clarify the request and/or waiver before proceeding. *See* U.S. v. Rodriguez, 518 F3d 1072, 1078-79 (9thCir 2008); Nom v. Spencer, 337 F3d 112, 118 (1stCir 2003); State v. Collins, 937 So2d 86, 92 (AlaCrimApp 2005); Freeman v. State, 857 A2d 557, 572-73 (MdApp 2004); State v. Tuttle, 2002 SD 94, ¶14, 650 NW2d 20, 28; State v. Leyva, 951 P2d 738, 743 (Utah 1997). "'An equivocal request for an attorney is one that expresses both a desire for counsel and a desire to continue the

interview without counsel.'" State v. Copeland, 949 P2d 458, 462 (WashAppDiv2 1998) (*clarified* by State v. Radcliffe, 194 P3d 250 (Wash 2008), recognizing a previous split in Washington Appellate Division Two) (quoting State v. Quillin, 741 P2d 589, 591 (WashApp 1987)).

[¶10.]        In *Smith v. Illinois*, the United States Supreme Court emphasized the distinction between waiver of *Miranda* rights and invocation of counsel. 469 US 91, 98 (1984). "Invocation and waiver are entirely distinct inquiries, and the two must not be blurred by merging them together." *Id*. The Court further emphasized:

> The importance of keeping the two inquiries distinct is manifest. *Edwards* set forth a "bright-line rule" that *all* questioning must cease after an accused requests counsel. In the absence of such a bright-line prohibition, the authorities through "badger[ing]" or "overreaching"-explicit or subtle, deliberate or unintentional-might otherwise wear down the accused and persuade him to incriminate himself notwithstanding his earlier request for counsel's assistance.

*Id*. (internal citations omitted). The Court determined that Smith's first statement requesting an attorney was clear. *Id*. at 97-98. The police should have stopped the interview. Instead, the police pushed Smith to continue. Smith then began to waiver concerning his request for an attorney. The Court said that the defendant's subsequent equivocal responses did not make his first clear request for an attorney ambiguous. *Id*. at 100.

[¶11.]        The United States Supreme Court in *Davis v. United States* considered the invocation of the right to counsel post *Miranda* waiver. 512 US 452 (1994). The suspect in *Davis* initially waived his *Miranda* rights and answered the officers' questions for about an hour and one-half before making an ambiguous reference to needing a lawyer. *Id*. at 454-55. The question was whether the officers were

required to cease the interrogation. The Court determined that "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning."[1] *Id.* at 459 (emphasis in original). The Court held that "after a knowing and voluntary waiver of the *Miranda* rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney." *Id.* at 461. A person subjected to custodial interrogation must invoke the right to counsel "sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id.* at 459.

[¶12.] However, courts, including this Court, have held that in a pre-waiver situation where the accused has *not yet validly waived* the *Miranda* rights, the officers must clarify the waiver before proceeding with the interview. *See Rodriguez*, 518 F3d at 1078-79; *Nom*, 337 F3d at 118; *Collins*, 937 So2d at 92; *Freeman*, 857 A2d at 572-73; *Tuttle*, 2002 SD 94, ¶14, 650 NW2d at 28; *Leyva*, 951 P2d at 743. In *United States v. Rodriquez*, the court held that the rule from *Davis* requiring a suspect to clearly request an attorney addresses only the scope of

---

1. Courts have concluded that the following statements are ambiguous or equivocal requests for *Miranda* rights: State v. Rogers, 760 NW2d 35, 58-59 (Neb 2009) (determining that statements prefaced by "I think," "maybe," or "I believe," or phrased in terms of a hypothetical are equivocal); Noyakuk v. State, 127 P3d 856, 867-68 (AlaskaApp 2006) (determining that "Shouldn't I just have my attorney with me, or something?" was an equivocal request); Henry v. State, 462 SE2d 737, 742 (GA 1995) (defendant's response "I might need one. If I need one," was an equivocal statement and did not require officers to cease questioning).

invocations of *Miranda* rights in a *post-waiver* context. 518 F3d at 1078-79. The court held:

> [The] rule of *Davis* addresses only the scope of invocations of *Miranda* rights in a *post-waiver* context. It is well settled that "[i]nvocation and waiver [of *Miranda* rights] are entirely distinct inquiries, and the two must not be blurred by merging them together." *Smith,* 469 US at 98. *Davis* addressed what the suspect must do to *restore* his *Miranda* rights after having already knowingly and voluntarily waived them. It did not address what the police must obtain, in the *initial waiver* context, to begin questioning.

*Id.* The Utah Supreme Court determined that *Davis* applied to an equivocal request for *Miranda* rights post-waiver, not to pre-waiver situations. *Leyva,* 951 P2d at 743. If the equivocal invocation is pre-waiver, the officer must limit questioning to clarify the intent of the accused. *Id.* "'Any questioning after the equivocal assertion of the right to counsel must be strictly limited to clarifying the suspect's wishes.'" *Copeland*, 949 P2d at 462 (quoting *Quillin,* 741 P2d at 591).

[¶13.] In *State v. Tuttle*, we recognized the importance of clarifying a suspect's ambiguous response to whether the suspect wished to waive his *Miranda* rights. 2002 SD 94, 650 NW2d 20. We said:

> After an officer has informed a suspect of his *Miranda* rights and has determined that the suspect understands those rights, the officer must then determine if the suspect is willing to waive those rights and answer questions. If the suspect responds ambiguously or equivocally, the officer must then focus on clarifying the suspect's intent.

*Id.* ¶14, 650 NW2d at 28 (plurality opinion) (quoting *Leyva*, 951 P2d at 744).[2]  It logically follows from *Tuttle* that in the initial waiver of rights, the clarification requirement regarding an ambiguous waiver of *Miranda* rights also applies to an ambiguous request for an attorney.  *See* Harvey Gee, *Race and the American Criminal Justice System: Three Arguments about Criminal Law, Social Science, and Criminal Procedure*, 85 U Det Mercy L Rev 115, 135 (Winter 2008) (asserting that "the *Davis* rationale is limited to the post-waiver ambiguity, not an ambiguous request for counsel in the context of the initial advisement of rights").

[¶14.]        Here, the State argues that Blackburn's statement was not a request, equivocal or otherwise, for an attorney or to stop the interview.  Alternatively, the State argues that if Blackburn's statement is considered an equivocal request for an attorney, his request is post-*Miranda* waiver and the officer could continue questioning absent a clear request.  Blackburn did not address whether he made an equivocal waiver of his *Miranda* rights.  Rather, Blackburn argues that the entire second interview is inadmissible because it was involuntary.  Blackburn bases this argument on the premise that the second interview was a continuation of the first interview, and because of the connection between the interviews, the coercive taint

---

2.    In *Tuttle*, we determined that the defendant knowingly, intelligently, and voluntarily waived his rights but that the defendant's confession itself was coerced.  2002 SD 94, 650 NW2d 20.  Two Justices concurred in the plurality opinion, and the other three Justices filed opinions concurring in part and dissenting in part.  The additional opinions did not dispute that an officer must clarify the suspect's intent after an equivocal wavier of Miranda rights.  *Id.* ¶¶37-64 (Gilbertson, C.J., Sabers and Zinter, J.J., concurring in part and dissenting in part).

from the first interview also cloaks the second interview. As stated *supra*, ¶8, Blackburn did not properly preserve this issue for intermediate appeal.

[¶15.] A review of the taped interview indicates that Blackburn's reference to an attorney is part of his response to the advisement of rights. As Sargent read Blackburn his rights, Blackburn indicated that he understood the rights. After reading the rights, Sargent asked Blackburn: "Keeping these rights in mind, do you wish to talk to us now?" Blackburn responded "yes," but immediately conditioned his response, saying, "I'd like there to be a lawyer present just so I don't fuckin' step myself over the deep end or nothing else, but I mean at this point I really don't see why there needs to be one. . . ." After Blackburn's response, Sargent did not limit his questions to clarifying if Blackburn wanted an attorney.

[¶16.] Whether Blackburn's request for an attorney was equivocal is determined by "a reasonable person standard," that is, whether "a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis*, 512 US at 459. The trial court determined Blackburn's statement was ambiguous or equivocal. The trial court's determination recognized the contradictory messages in Blackburn's statement. In Blackburn's response, he first said, "I'd like there to be a lawyer present just so I don't fuckin' step myself over the deep end or nothing else." Had Blackburn stopped here, his message would have been clear that he wanted an attorney. However, Blackburn continued, "but I mean at this point I really don't see why there needs to be one. . . ." Blackburn's statement expressed both a desire to have an attorney and a desire to continue

without. The trial court was not in error in finding Blackburn's statement ambiguous and in need of clarification before continuing with the interrogation.

[¶17.] The State argues in the alternative that Blackburn's ambiguous request for an attorney came after he had validly waived his *Miranda* rights, thus no clarification was needed. Waiver of *Miranda* rights is viewed in light of the totality of the circumstances. *See Tuttle*, 2002 SD 94, ¶14, 650 NW2d at 28. During Blackburn's first interview, Blackburn requested an attorney more than twenty-five times and also repeatedly refused to talk to anyone. The interrogating officers did not heed Blackburn's requests during the first interview. Blackburn was not permitted to call an attorney at any time. Then, approximately thirty hours after the first interview, Blackburn was interviewed a second time. He indicated that he understood his rights. In answer to whether Blackburn wished to talk to the officers, he said, "Yes," but then qualified his answer with his response of wanting an attorney but "not see[ing] why there need[ed] to be one" because he wanted to know what the officers knew and what he may have told them the night before when he was drunk and high on cocaine. Regardless of Blackburn's experience with the criminal system, he had not previously been charged with such a serious crime. The ambiguity of his answer leaves the waiver of his *Miranda* rights in question. As such, the officer had a duty to clarify Blackburn's statement to determine if he wanted an attorney. *See Rodriguez*, 518 F3d at 1078-79; *Nom*, 337 F3d at 118; *Collins*, 937 So2d at 92; *Freeman*, 857 A2d at 572-73; *Tuttle*, 2002 SD 94, ¶14, 650 NW2d at 28; *Leyva*, 951 P2d at 743.

[¶18.] Blackburn's ambiguous request for an attorney was part of his answer to the officer's question of whether he wished to waive his rights. Consequently, the State's argument that Blackburn had already waived his right to an attorney when he answered, "Yes," parses the suspect's answer unreasonably. This is unlike the situation in *Davis* where the post-waiver ambiguous request for a lawyer came after an hour and one-half of police questioning. Additionally, it appears that Sargent had some question about Blackburn's original statement since he came back to it later in the interview in an attempt to clarify. Had Sargent clarified Blackburn's response initially, like he did later, Blackburn's waiver of rights and invocation of his right to an attorney could have been clearly determined.

[¶19.] We affirm.

[¶20.] GILBERTSON, Chief Justice, and KONENKAMP and ZINTER, Justices, and SABERS, Retired Justice, concur.